# TAYLOR *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Change of venue; practice and rule governing granting of.*—Upon an application for a change of venue in a criminal case, both parties may be heard *on affidavits* in favor of or against the allowance of the application. And the court will allow the change or refuse it, according to the preponderance of the evidence.—*Ex parte Chase*, 43 Ala. 303.
2. *Same; what not sufficient objection to affidavits.*—It is not a sufficient objection to the affidavits read in support of such an application or against it, that several deponents have signed and sworn to the same statement of facts in one affidavit, if the affidavit is properly certified.
3. *Same; court not bound to hear oral testimony in support of.*—It is not error for the court to refuse to hear oral testimony on an application for a change of venue. Such testimony should be made by affidavit.
4. *Juror, name of as written in list; presumption as to ruling of court as to.*—It is proper to submit to the court the question whether the name of a juror on the list of those delivered to the defendant is properly or improperly spelled. And if upon inspection the court determines that the name is properly spelled, this decision is conclusive, if there is not other proof in the record of its incorrectness.
5. *Self-defense, charge ignoring plea of; when not erroneous.*—On the trial of a defendant charged with murder in the first degree, where the evidence shows that the accused was not forced to take the life of the deceased in order to save his own life or limb from serious peril, and had no reasonable cause to entertain a belief of such necessity to take life, a charge of court which ignores the excuse of self-defense is not erroneous.
6. *Opprobious words; not excuse for homicide.*—No words, however insulting, will excuse a homicide. There must be peril to life or limb, or reasonable ground to suppose that such peril exists, before the law will permit the taking of life, under the excuse of self-defense.
7. *Same; evidence of, when only admissible.*—Evidence of opprobious words or abusive language used by the person assaulted, is good in extenuation only when the indictment is for an assault, assault and battery, or affray. Revised Code, § 4198.
8. *Charges as to self-defense; when may be properly refused.*—Where there is evidence showing that a homicide was perpetrated, under circumstances which did not compel the slayer to take life to save his own life or limb from peril, and which also show that the slayer had no reasonable cause to believe in the existence of any necessity to take life, charges as to the law of self-defense are abstract and may be properly refused.
9. *Change of venue; application for, what must state.*—An application for a

Taylor v. The State.

change of venue in a criminal case must set forth specifically the reasons why the person charged with an indictable offense can not have a fair and impartial trial in the county in which the indictment was found, and must also be sworn to by the person so charged, else the court is not bound to hear, or receive or consider it.

*Levy v. The State*, (at present term,) reaffirmed as to the powers of the city court of Mobile and the construction of the statutes in relation to the organization of petit juries.

APPEAL from the City Court of Mobile.
Tried before Hon. C. F. MOULTON.

The appellant was indicted for the murder of Mack Mitchell, went to trial on plea of not guilty, was convicted of murder in the first degree, and sentenced to confinement in the penitentiary for life.

The murder occurred at a small town in Mobile county called Whistler. The slayer and the slain "were both colored men."

It appears from the bill of exceptions that on the first day of the term the case was called, but on the suggestion of defendant's counsel that he would apply for a change of venue, the court passed the case. On the 18th of March, 1872, the case was called and day set for its trial, and the court then gave the defendant until the 22d of March, and no longer, to file his affidavits and application for a change of venue.

The application for the change of venue states, in substance, that the murdered man was well known and much respected in Whistler, while defendant was a stranger there and comparatively unknown; that the murdered man had many friends and relatives in Whistler, who had greatly exerted themselves to defendant's prejudice; that "one Dennis Brown, an influential colored man, pointed to the fact that defendant had left the State after the murder, as an evidence of his guilt; that said Brown had repeatedly cursed defendant, and has used all his influence, which is great, with the colored people to prejudice them against defendant, and has created great prejudice in their minds against defendant;" that one McGonigle, a white man, has

also been very bitter against defendant, saying he should be hung, and has denounced defendant so bitterly and repeatedly that the minds of the people of the county had become greatly excited and prejudiced against him; for which reason it is impossible for him to have a fair and impartial trial in the county. It is also stated defendant is penniless, has been confined in jail a long time, and has had no opportunity to counteract this prejudice, and no friends to aid him in doing so.

In support of the petition for change of venue, the defendant filed the affidavits of Carson and Daniels. The substance of these affidavits is, that affiants have been residents of Whistler, where the murder occurred; that Mitchell was well known, and had many friends, while defendant was unknown; that affiants had conversed with many people in Whistler, and had never heard any person say a good word for defendant; that the people in the northern part of Mobile county, particularly around Whistler, were greatly prejudiced against defendant. Nothing is said in either of the affidavits as to the feelings of the people in other parts of the county.

The State offered a counter affidavit, which, omitting its caption, was as follows:

"We, the undersigned, having been duly sworn, make oath and say, that we are resident citizens of Whistler in Mobile county, and adjacent thereto, and that we are well acquainted with the people thereof, and of Mobile county; that there is no such prejudice existing in said town of Whistler, nor in Mobile county, that would prevent or interfere with the fair and just trial of the said Solomon Taylor; that the said Solomon Taylor is but little known or talked about, and that the said Mack Mitchell, in his lifetime, was but little known and without any influence; and that his family and friends and relatives are persons without any influence or control over the public mind, or of the people of Whistler or of Mobile county, and are all of no wealth or power in the town of Whistler, or in Mobile county; that the efforts of the said Dennis Brown and of

McGonigal, as alleged by said Solomon Taylor in his affidavit, have had no effect or influence on the minds of any one, as your affiants verily believe and say, (if the said Brown or McGonigal have ever made any efforts,) and that the said Solomon Taylor can, and no doubt will, have a fair and impartial trial in Mobile county at this time."

This paper was signed by twenty-seven persons. At the foot of the affidavit was the following:

"State of Alabama, } I do hereby certify that the per-
    Mobile county. } sons whose names are signed above were duly sworn to it before me, Hiram Carver, notary public in and for Mobile county, this 26th day of March, 1872.
                                "HIRAM CARVER,
                        "N. P. and ex-officio J. P., M. C."

"The defendant then objected to the reception of this paper in evidence, on the ground that the certificate of the justice did not show that the persons who subscribed the same had not made oath thereto. The court overruled the objection, and the defendant excepted.

"The defendant then offered in evidence new affidavits, subsequent to the reading of the affidavits by the State, in support of said application. The court refused to receive the same, and the defendant excepted; the defendant having had, by orders of the court, from the 26th of February to the 22d of March to file his affidavits."

"The defendant then afterwards offered to introduce oral testimony, by the examination of witnesses in open court, in support of said application. The court refused to hear the evidence of said witnesses, and the defendant excepted. The court then refused, after considering the evidence, to grant defendant a change of venue, and the defendant excepted.

"The defendant then, afterwards, offered another and additional application for a change of venue, containing allegations entirely different from those in the first application, which the court refused to hear, to receive, or to consider. To which ruling the defendant excepted."

This second application is not set out or in any way made

part of the records.    The bill of exceptions makes no other mention of it, or of the additional affidavits, than as stated above.

The defendant then made a motion to quash the *venire*, based upon facts the same in substance as those in *Levy v. State*, (at present term,) on page 171 of this volume. This motion the court overruled.

"The defendant then exhibited the list of the jurors that had been served upon him, and showed that the same was written with a lead pencil, and that two names thereon were illegible, and for these reasons objected to being tried with said *venire*.    The court overruled the objection, and the defendant excepted.    The court ordered the two names so questioned to be omitted, and ordered four other jurors to be summoned, which was done after the regular *venire* was exhausted.    F. W. King was then called as one of the jurors to try defendant, to whom defendant objected on the ground that the name was written in the list served upon him "J. F. W. King," with the "J" partly erased with a rubber, though the outlines of the letter were distinct, but exhibited signs of erasure, and exhibited his list to the court showing the same.    The court overruled the objection, (because, on inspection of the list of names, it appeared to the court that the name of F. W. King was plainly written, and defendant accepted the juror to try the case,) and the defendant excepted."

But two witnesses were examined as to the killing.    The first witness for the State testified, in substance, that " one night in the spring of 1870, the month not remembered by the witness, the defendant, Solomon Taylor, Haywood White and Mack Mitchell were in a room belonging to Haywood White and adjoining a barber shop of his, in which the defendant was employed and worked.    They were engaged in playing cards—poker, five cents ante. During the playing of one of the hands, witness and Mack Mitchell drew out of the game, leaving White and the defendant in it.    (In the meantime Dennis Brown had entered the room, thrown himself on a bed therein, and gone

to sleep). While this hand was being played, the defendant accused Mitchell of stealing a card from the deck and giving it to his opponent, White. Mitchell responded by calling defendant a liar. The latter repeated the charge, when Mitchell responded again, more excitedly, calling defendant a damned liar. An altercation of words then ensued between Mitchell and the defendant, during which Mitchell said, 'if you don't like it, help yourself.' Defendant replied, 'I will help myself,' and immediately left the room, went into the room adjoining, and in about five minutes returned (the witness stated on cross-examination it might have been one minute) with a double barreled shotgun to the door of the room, and pointed it at Mitchell's head. He said to Mitchell, 'Do you mean it?' Mitchell, without answering, sprang towards the defendant, for the purpose, as witness thought, of grasping the gun, when the gun was fired by the defendant, the load from which entered the head of Mitchell and caused his death in half or three-quarters of an hour. Mitchell was sitting with his back against the wall, nearly opposite the door at which defendant appeared with the gun. When he was shot he fell with his head outside of the door, or near the door, at which the accused stood when he fired, and a pool of blood from the wound was formed in the passage without the door. Taylor was standing when the shot was fired."

Deceased had no weapons about him, nor had the parties any grudge. The card players had been drinking from a bottle of whisky, but none of them were drunk or under the influence of liquor. Deceased was a larger and stouter man than defendant.

The other witness to the killing testified, that after watching the game for some time, he went to sleep on a bed in the room; that "when he awoke the accused was standing at the door of the room with the gun, saying something witness did not understand, in a loud voice, which caused witness to wake. Accused had a gun in his hand; witness did not know at whom it was pointed; he tried to catch hold of the gun and take it from Taylor; it fired before he

got to it. He heard something fall, turned around, and discovered Mack Mitchell lying upon the floor. Witness did not see Mitchell springing towards Taylor when he was shot, but Mitchell was sitting in his chair and fell at the foot of it."

. This was the substance of the testimony, with the exception of the evidence of the physician who examined the wounds upon deceased, and some proof of peaceable and law-abiding character of defendant, none of which need be further noticed.

The court, at the request of the State, charged the jury—

1st. "If you find from the evidence that the only cause or apology that defendant had for killing Mack Mitchell was insult by mere words, and not otherwise, that would not avail him anything."

2d. "It is the duty of the court to say to you that in this case the law of self-defense does not arise."

The defendant duly excepted to the giving of each of the above charges, and then requested in writing the following charges, each of which the court refused to give, and to each of which refusals defendant excepted:

"1st. If the jury find that the act of killing was performed in a moment of strong passion, precluding the idea of coolness and premeditation, the defendant would not be guilty of murder in the first degree.

"2d. If the jury believe from the evidence that the defendant fired the shot which killed Mack Mitchell under the influence of strong passion, induced by an assault connected with opprobious words, they can only find him guilty of manslaughter in the first degree.

"3d. While mere words and threats will not reduce the crime of murder to that of manslaughter, yet when they are accompanied with evidence of an assault upon the prisoner on the part of the deceased, this rule of law will not apply, and the jury are instructed to consider, from the facts of the case, whether or not the malice necessary to make the offense murder, existed in the mind of the prisoner at the time he committed the act.

Taylor v. The State.

"4th. If Mack Mitchell was rushing toward defendant at the time he shot, and defendant believed, or had reason to believe, that he would receive great bodily harm from him unless he shot in self-defense, the jury must find him not guilty.

" 5th. While passion without provocation, or provocation without passion, will not make the crime less than murder, yet passion without provocation may reduce the crime from murder in the first degree to murder in the second degree."

The various rulings of the court to which exception was reserved are now assigned as error.

MAYER & TURNER, for appellant.—1. The court erred in not receiving the additional affidavits. It was the only way defendant could rebut the facts sworn in the affidavit offered by the State. The defendant could not know how much or what testimony was necessary until the State's counter-affidavits were filed.

2. Oral testimony should have been received in support of the application. It is a much better way to test the witnesses; each party may examine the witness, and the court be better enabled to judge of the facts in issue. The necessity for the charge is to be established or refuted by like proof, as in other cases.—45 Ala. 43.

3. An inspection of the affidavits for the State will show that the affidavits of the State do not disprove many allegations of the application—they are not positive in stating that defendant could have a fair and impartial trial; nor are the facts accounting for the prejudice denied.

4. The court erred in not hearing the second application for change of venue; the right exists at any time before the trial. It might have been that the second application was based on facts which had just then come to the knowledge of the defendant. How can the court tell, without hearing the application?

5. The first charge given by the court was calculated to mislead the jury. It may be true that insult would not palliate the offense if, notwithstanding the insult, it was

done with deliberation and premeditation, two ingredients necessary to make murder in the first degree. But if, as the consequence of the insult, the prisoner's mind was so affected at the time he committed the act that it was performed without deliberation or premeditation, it would not be murder in the first degree. The jury must ascertain, as a matter of fact, that the act was committed with deliberation and premeditation. Any fact that will shed light upon this subject may be looked to by them, and constitutes legitimate proof for their consideration. Wharton's Am. Law of Homicide, 369; *Swan v. State,* 4 Hump. R. 136; *Pirtle v. State,* 9 Hump. R. 663; *Haile v. State,* 11 Hump. R. 369.

The second charge given was erroneous. The only witness who saw the entire transaction testified that "he (deceased) sprang forward, as witness thought, to grasp the gun." It was the legitimate province of the jury to determine whether or not the witness thought correctly, or whether the springing forward of the deceased was the assault of a full grown, matured and powerful man, upon a boy seventeen years of age. If the latter, the court could not say that the law of self-defense might not arise.

The first charge asked by defendant should have been given.—17 Ala. 587; 23 Ala. 17.

The second charge asked was proper.—Walker's American Crim. Law, 509–10.

The third charge asked should have been given.—1 Hale, 449, 456; Parker, J., in Selfridge's trial, 158; 2 Richardson Law, 34; 18 Ga. 17.

Jno. W. A. SANFORD, Attorney-General, *contra.*

PETERS, J.—This is an indictment for murder in the first degree, in the city court of Mobile, tried at a special term of said court, in the year 1872. The appellant, said Solomon Taylor, was found guilty, and sentenced to confinement in the penitentiary for life. From this conviction he appeals to this court.

The motion to quash the *venire* is the same in effect with

Taylor v. The State.

that made in the case of *Sam. Levy v. The State*, (decided
at the present term.)   We see no reason to depart from
the construction of our statutes. upon the organization of
petit juries returned to the special term of the city court
of Mobile, laid down in that case.   It is therefore adhered
to and re-affirmed.—*Sam. Levy v. The State*, (at present
term.)

I am unable to discover error in the action of the court
below, in the refusal of the application to change the venue
of the trial.   Whether the facts upon which the place of
trial was sought to be changed existed or not was a ques-
tion for the court, upon the proofs submitted on both
sides.   The preponderance of the evidence is strongly
against the accused.  ˙ The form of the affidavits against
the application, though somewhat unusual, is not a form
forbidden by law.   It is open as well to the defendant as
to the State.   I am not familiar with any principle of law
or practice which vitiates an affidavit because it is sworn
and signed by more than one person.   As many persons
as choose to do so, may swear in the identical same words
and verify their oaths by their signatures, and whether the
oath is written on one or many pieces of paper, makes no
difference.   Such an affidavit made before a notary public
in this State is sufficient.   Under our law a notary public
is a justice of the peace, and as such he may administer
an oath.—Const. Ala. Art. VI, § 13; Rev. Code, § 841,
1083, 4206; *Ex parte Chase,* 43 Ala. 303.   One of the series
of affidavits offered by the prosecution is signed by *twenty-
seven* persons, and it is sworn and subscribed before a
"notary public and *ex-officio* justice of the peace," and it
is so certified by that officer to the court.   This is suffi-
cient.   There was no error in refusing the motion to re-
ject it.

The motion to hear oral testimony on the application for
a change of venue was unusual.   There is no mode of pro-
cedure fixed by the statute, but the mode of proof by affi-
davit is the customary practice, and it is that indicated in
*Ex parte Chase*, (43 Ala. 303, 312.)   It was also the prac-

tice in like cases at common law.—3 Bla. Com. p. 304; *Motions and Affidavits*, 3 Chitt. Gen'l Pr. p. 571, *et seq.*; *Motions*, 1 Tidd's Pr. 478, *et seq.*; 11 Bouv. Law Dict. p. 199; Motion, and authorities there cited. The court, then, did not err in rejecting the oral testimony.

In the selection of the jury on the trial below, the defendant complained that the name of one of the jurors in the list delivered to him was written "J. F. W. King." There had been an effort to rub out the J. The true name was F. W. King. The court, upon inspection, decided that the name of "F. W. King was plainly written" on the list of jurors delivered to the defendant, and upon this inspection the motion to strike out the name of King was refused. To this the defendant excepted. There was nothing wrong in this refusal. The court is the only judge in such a case, and unless the proofs show that it was perversely mistaken, his judgment is final. There is nothing in the record showing that its judgment was incorrect. There was, then, no error in the refusal complained of.

I have carefully examined the charges of the court on the trial below, both those given and excepted to, and those asked and refused, and I am unable to detect any error in either. The charges which are given, and those that are asked by the defendant, must always be referred to the offense alleged in the indictment, and the evidence by which it is intended to be supported or denied. Otherwise, they are liable to transcend the limits of the issue and become separated from it. Such charges are abstract. They are too broad or too narrow for the issue or the proofs. The offense in this case is a felonious homicide. There was no evidence tending to show that it had been committed in necessary self-defense. The assault was altogether on the side of the slayer. He was the assailant, not the person assailed. His resort to his gun was for redress and not for self-defense. One may prevent an injury from being done, by all proper means; but when done he may not take redress in his own hands.—Walker's Amer. Law, p. 210, § 87, 5 Ed. No words, however

insulting, will excuse a homicide, nor will an assault which has been occasioned by the slayer. There must be peril to life or limb, or reasonable ground to suppose that such peril exists, before life can be taken under the excuse of self-defense.—*Oliver v. The State,* 17 Ala. 597; 1 Russ. on Cr. p. 669; Whart. Amer. Law of Homicide, p. 168, *et seq.* Evidence of opprobrious words or abusive language, used by the person assaulted, is good in extenuation or justification only when the indictment is for assault, assault and battery, or affray.—Rev. Code, § 4198. It is not permissible on the trial of an indictment for an offense of a higher grade. Here, the deceased and the defendant had been engaged in playing a game of cards. The defendant accused the deceased of "stealing a card from the deck" and giving it to his opponent, one White. This charge was rudely denied by the deceased, and the denial repeated by calling the defendant "a damned liar." After this, the defendant quit the room in which the gaming and altercation had taken place, and soon returned with a double-barrelled gun and shot the deceased in the head, which occasioned his death within an hour after the infliction of the wound. Under such a state of the proof there was no grounds for the plea of self-defense, or such an extenuation of the crime as to reduce it from the grade of murder in the first degree to manslaughter. The court did not, then, err in the charges given, which ignored the plea of self-defense, nor in refusing the charges which sought to reduce the crime from murder in the first degree to manslaughter. The charges asked were not supported by the evidence. They were abstract, and properly refused.

The judgment of the court below is therefore affirmed, and that court will proceed to execute its sentence according to law.

NOTE BY REPORTER.—At a subsequent day of the term the appellant filed an application for rehearing, which did not come into the Reporter's hands. It was responded to as follows:

PETERS, J.—This is an application for rehearing. The

ground is, as I understand the petition, the failure of this court to notice the second application for a change of venue, as shown in the record.

The record shows that there was one application for change of venue, founded on affidavits in support of the motion in the usual form. This was heard and refused, and the refusal excepted to. This refusal was approved by this court. But after this refusal and exception, the record goes on immediately to recite as follows, to-wit: "The defendant then *afterwards* offered another and additional application for a change of venue containing allegations entirely different from those in the first application, which the court refused to hear, to receive or to consider. To which ruling the defendant excepted." This is all that is said in the record upon this subject. This does not show such an application as the court was bound to notice. A mere reading of the Code will show this. I quote the statute. It is in these words: "Any person, charged with an indictable offense, may have his trial removed to another county, on making application to the court, *setting forth specifically* the reasons why he can not have a fair and impartial trial in the county in which the indictment is found, *which application must be sworn to by him.*"—Rev. Code, § 4206. This is the rule. And it must appear from the record that it has been complied with, before the court below can be presumed to have been in error. The above application does not show that the above requirements of the law were complied with. A mere application is not enough. It must set forth the reasons required by the statute, and must be sworn to by the person charged, else the court is not bound to entertain it. Nothing is intended to be said in this opinion as to the right of the defendant to make a second application, at the same term of the court at which the first has been refused. This question is wholly pretermitted. It is only intended to point out, in this opinion, what is required by law in the first application, to fix error upon the court for a refusal to consider it and decide upon it.

The rehearing is denied with costs.