[Kimbrough v. The State.]

# Kimbrough *v.* The State.

*Indictment for Murder.*

1. *Jury; what properly organized.*—The fact that one or more of the persons on the *venue* served on a prisoner, charged with a capital offense, were on the regular juries for the week, and could not be obtained as jurors for the prisoner's trial, because then engaged on the trial of another cause, gives the prisoner no right to delay the impanneling of the jury for his own trial, until such persons are discharged as jurors on the other case, or to otherwise delay the trial.

2. *Killing; what cannot be set up to excuse.*—A slayer cannot urge, in his own justification, a necessity produced by his own wrongful and unlawful act, as a valid reason for killing his assailant.

APPEAL from Chambers Circuit Court.

Tried before Hon. JAMES E. COBB.

The appellant was indicted for the murder of one Henry Lett, and the list of jurors for his trial, which was duly served on him, contained the regular jurors for the week. In drawing the jury for his trial, the third name and others were those on a regular jury then engaged in the trial of another cause. The judge ordered the names of these jurors, as they were drawn, laid aside, and that others be drawn in their stead. The defendant objected, and insisted that they should be called from the jury room and put upon the parties for acceptance or rejection, which the court refused to do, and defendant excepted. The list served upon the prisoner having been exhausted before a jury for his trial was obtained, and those on the list which were in the jury room not having returned, it was ordered that an additional number be summoned, according to the statute, to complete the jury. To this action the defendant duly excepted.

There was evidence, in this cause, from two witnesses who were present at the killing, to the effect that they were attracted by loud talking, and, on going to the place whence it proceeded, found the deceased and defendant engaged in a controversy about a note. One of these witnesses testified that soon afterward the deceased, in turning or stepping backward, struck his feet against some obstacle, and fell to the ground. When the deceased fell, the defendant rushed upon him, and cut him in the neck with a knife. There was evidence tending to show that this witness had made state-

ments to the effect that the deceased was stooping to pick up a rock when the defendant cut him.

Another witness for the State, who was a brother of deceased, testified that the defendant, with his left hand against the shoulder and his knee against the thigh of deceased, pushed him backward, when the foot of deceased striking some object, he fell, and, as he was falling, the defendant struck him with a knife in the neck ; that witness attempted to arrest the defendant, after the cutting, but defendant cut witness with the knife and ran ; that witness followed the defendant a short distance, and threw a rock at him, and returned to his brother, who died almost immediately.

One Joe Smith, a witness for the defendant, testified that he was passing along the road near where the deceased and defendant were standing, some fifteen steps from them ; that he heard them quarreling, and heard the deceased say to the defendant, "put up your knife, and fight a fair fight," and heard the defendant say, in reply, "that he would not do it; that his finger was sore, and he could not fight."

After the general charge had been given, the counsel for the defense orally asked the court to instruct the jury, as part of the law of self defense, "that the law does not require a party to retreat before taking life, if by so doing he increases his peril." This charge, the court refused to give; but, instead, instructed the jury that if a person willingly engage in a fight, and, in the fight so willingly engaged in by him, kills his opponent, he cannot invoke the doctrine of self defense to his entire justification—unless it appears that he had done all he could reasonably do to avoid the combat, even to a retreat, though, by so doing, he increased his peril. To this charge, the defendant excepted.

The jury found the defendant guilty of murder in the second degree, and assessed his punnishment at forty years' imprisonment in the penitentiary; and judgment was rendered accordingly.

No counsel for appellant.

HENRY C. TOMPKINS, Attorney-General, contra. ·

MANNING, J.—Appellant was charged with the murder of one Henry Lett, and among the persons of the *venue* summoned to compose a jury to try him, of which a list had been duly served, were, as the statute directs, those who belonged to the regular juries of the week ; and, in drawing out the names, the third and others were some of these, who

were then in a room in the court-house engaged, as members of a jury, in the consideration of another criminal case, which had been committed to them, under their oath, to render a true verdict therein. The judge, therefore, ordered their names, as they were respectively drawn, laid aside, and that others be drawn in their stead. To this course, the defendant objected, and insisted that they should be called from the jury room as their names were drawn, and put upon the parties for acceptance or rejection; which being refused, defendant excepted. And the names of all who were originally summoned having been exhausted before the jury was complete, and those who were in the jury room not having yet returned, it was ordered that an additional number be summoned from the bystanders, or others, according to the statute, for the completion of the jury; to which, also, defendant duly reserved an exception. And it is insisted that the objection of defendant should have been allowed, and the business of the court suspended until the jury then out returned into court, and were discharged of the case committed to them.

The constitution gives to the person indicted the right to a trial "by an impartial jury." How this shall be constituted, it is left to the legislature to provide. To this end, it was enacted, among other things, that for the trial of a capital case, there shall be summoned to select from "not less than fifty nor more than one hundred persons, including those summoned on the regular juries for the week."—Code of 1876, § 4874. A list of these is to be delivered to defendant, if he is in confinement, one entire day before the trial.—§ 4872. If the persons summoned as jurors *fail to appear*, or if the panel is exhausted by challenges, neither the defendant nor his counsel is entitled to a list of the persons summoned to supply their places."—§ 4873. "A mistake in the name of any person summoned as a juror for the trial of a capital offense, either in the *venire*, or in the list of jurors delivered to the defendant, is not sufficient to quash the *venire, or to delay or continue the trial*, unless the court, in its discretion, is of the opinion that the ends of justice so require. Others are to be "forthwith summoned to supply their places."—§ 4876. And "any person who appears to the court to be unfit to serve on the jury, may be excused on his own motion, or at the instance of either party."—§ 4885. If all the slips of paper containing the names of those first summoned are drawn, "and the jury *is not made up*, the court must direct the sheriff to summon at least twice the number of jurors required to complete the jury,

whose names are also to be written on slips of paper, deposited and drawn."—§ 4878.

These enactments manifest a desire to favor the accused in the circumstances provided for, so far as the due administration of the law will permit, but not to such an extent as "to delay or continue the trial," or obstruct the business of the court. It is presumable that when the legislature authorized the summoning of "the regular jurors in attendance" among the number, not less than fifty nor more than one hundred, above mentioned, it contemplated that some of those regular jurors might, at some time when their names were called, be engaged in the trial or consideration of another cause, from which they could not, without a violation of law and of the rights of other parties, be discharged or brought into court, or voluntarily come themselves.—1 Bish. Cr. Pr. § 995. See, also, Clark's Man. of Cr. Law, pp. 450–51. Being thus kept away, the contingency has happened, when other persons should be summoned to supply their places.

Any other construction than this of the statutes would often produce the stoppage, in such conjunctures, of all the important remaining business of the court. For, if it must idly wait until the jury out shall agree on a verdict and bring it in, the term during which the court may lawfully remain in session might expire, or so much of it be wasted that other causes could not be tried, and those interested in them, perhaps innocent persons impatient for a trial, be consequently kept in prison six months longer, until the court shall again be holden. Consequences so oppressive could not have been intended by the legislature; and its enactments should not be so construed as to produce them. It is a case in which the maxim, *argumentum ab inconvenienti plurimum valet*, is applicable.—11 Meeson & W. 928–9; 10 *id.* 434.

The judge did not err in ordering the drawing for jurors to proceed.

Nor was there any error in the refusal to charge, in this case, as requested, or in the charge given which was excepted to.

A slayer cannot urge, in justification, a necessity produced by his own unlawful and wrongful act, as a valid reason why he may lawfully kill his adversary.—*Eiland v. State*, 52 Ala. 332; *Lewis v. State*, 51 Ala. 1; Clark's Man. of Cr. Law, § 377 *et seq.*, and cases there cited.

Let the judgment of the circuit court be affirmed.