# Shelton *v.* The State.

## *Indictment for Murder.*

1. *Empaneling jury in capital case; when court need not send for absent jurors.*—The primary court is not required to delay the empaneling of a jury for the trial of a capital case, because some of the persons whose names are on the venire served on the prisoner, are absent from the court room, engaged in deliberating upon their verdict in another cause; and the refusal of the court to send for such jurors when their names are drawn, is free from error.

2. *Same; when objection to can not be made in appellate court.*—An exception can not be based on a ruling of the court which was induced by the objection of the party excepting; and hence, where, in a capital case, some of the persons whose names were on the venire served on the prisoner, were absent from the court room, engaged in deliberating on their verdict in another cause, when their names were drawn, but afterwards, and before the empaneling of the jury is completed, they returned, and the court offered to replace their names in the hat for the purpose of enabling the parties to select the remainder of the panel from them, but this is not done on account of objections made thereto by the defendant,—*held*, that the defendant, by his objection, waived the right to except to the refusal of the court to replace, on his motion, the names of such persons in the hat, to be drawn as jurors.

3. *When order directing sheriff to serve prisoner in capital case with venire free from error.*—When the term of the court continues longer than one week, an order made in a capital case during the first week, fixing a day in the second week for the trial, ordering a special venire to be summoned, and directing the sheriff to "furnish the defendant, in his own proper person, with a list of the names of the persons so summoned, including those summoned *for* the regular juries for said second week, and a copy of the indictment in this case," etc., is a substantial compliance with the statute, and free from error.

4. *Floyd's case, 55 Ala. 61, distinguished and limited.*—The principle announced in *Floyd's case*, 55 Ala. 61, that the list of jurors served on the prisoner should include only those regular jurors "in attendance," and not those who, though summoned as regular jurors, were excused or discharged when the jury was organized, is "limited in its application to those cases where the trial is set, and the order made, at a time when the regular juries are summoned to be in attendance," and is declared not to apply "to those cases where the order for the venire is made, and the trial set at a time before the arrival of the particular day when the regular juries are required to be in attendance."

5. *On appeal in capital case, service of venire and copy of indictment need not be affirmatively shown.*—The record on appeal in a capital case need not show affirmatively that the prisoner was served, as required by the statute, with a copy of the indictment and venire; but, in the absence of any objection in the primary court on that ground, such service will be presumed to have been properly and regularly made.

6. *Declaration by defendant; when inadmissible for him.*—On the trial of a defendant indicted for the murder of his wife, a declaration made by him prior to the killing, and not constituting a part of the *res gestæ,*

[Shelton v. The State.]

as to an improper intimacy between another man and the deceased wife, is not admissible as evidence in his favor.

APPEAL from Hale Circuit Court.

Tried before Hon. JOHN MOORE.

At the fall term, 1882, of said court, Frank Shelton, the defendant in the court below, appellant here, was indicted for the murder of Lucy Shelton; and at the next term he was tried, convicted of murder in the first degree, and sentenced to be hung. When the parties announced themselves ready for trial twelve of the regular jurors for the week, whose names were on the venire which had been served on the defendant, were absent from the court room, and were in the jury room, considering the case of one McCoy, charged with grand larceny, which had been submitted to them the day before, and concerning which they had been unable to agree on a verdict. Before proceeding to organize the jury in this case, the court asked McCoy's counsel whether they would consent to a mistrial in his case, so that said jurors might be present in the court room to answer to their names, if called in defendant's case. This McCoy's counsel refused, and the court so stated to the solicitor for the State and defendant's counsel. The names of the fifty persons summoned as jurors in the case, including the regular jurors for the week, among them being the twelve jurors then absent as above stated, were placed in a hat, and the court directed the sheriff to draw out one name at a time, etc., for the purpose of making up the jury. Thereupon the name of one Bond was drawn from the hat, and the sheriff stated to the court that said Bond was one of the regular jurors empaneled for the week, and was out in the McCoy case. Defendant then moved the court to send for said Bond, and have him brought in and examined as to his competency as a juror in this case. The court refused the motion, and the defendant excepted. The name of Bond was then laid aside by the sheriff under the direction of the court. Thus, as the drawing proceeded, nine of the regular jurors who were out in the McCoy case, were drawn, and similar motions made by the defendant, and overruled by the court, and exceptions reserved, and the names of the jurors laid aside, when, and before the jury had been completed, the jury in the McCoy case came into court, and returned their verdict. The drawing of jurors was then proceeded with, and continued until all fifty names had been drawn from the hat, only nine jurors having been selected, and leaving three more to be selected to complete the jury. The court then directed the sheriff to put the names of the nine jurors, who were absent when called, back in the hat to be again drawn. To this course the defendant objected, when the court

[Shelton v. The State.]

proposed to have said nine jurors called in the order in which they had been orginally drawn. To this the defendant also objected, when the court stated to his counsel that the court would take any course to complete the jury which they would move the court to take. To this the defendant's counsel replied that they would not make any motion, and would reserve an exception to any course the court might take. Thereupon the court ordered the sheriff to summon six persons as jurors, and to this direction the defendant excepted. The sheriff then summoned and brought into court six jurors, none of whom were on the McCoy jury, and their names were placed in the hat and drawn out one at a time, the defendant objecting and excepting as each juror was drawn and put on the defendant for his acceptance. These six persons having all been challenged, the sheriff, under the direction of the court, summoned six other persons, none of whom were on the McCoy jury, and their names were placed in the hat and drawn; and from them two jurors were accepted by both the State and defendant, leaving only one juror to be selected. The defendant then moved the court to direct the sheriff to put the names of the nine jurors, who were out on the McCoy case, back in the hat, and to draw from them to complete the jury. This the court refused to do, and the defendant excepted. The court then, on defendant's motion, directed the sheriff to place in the hat, to be drawn, the names of two of the said nine jurors. Other proceedings were had in empaneling the jury, not necessary to be here stated.

On the 9th April, 1883, the defendant was arraigned, and the 19th April, 1883, being "Thursday of the second week" of the term, was set for the trial; and the sheriff was then ordered "to summon fifty persons from the qualified citizens of Hale county as jurors, including those summoned on the juries for said second week, for the trial of said cause, and to furnish the defendant, in his own proper person, with a list of names of the persons so summoned, including those summoned for the regular juries for said second week, and a copy of the indictment in this case, at least one entire day before the day set for his trial, said defendant being confined in jail." The record does not show that a copy of the indictment and a list of the jurors were served on the defendant.

The evidence introduced on the trial tended to show that on the morning of 25th June, 1882, the defendant shot the deceased, his wife, four times with a pistol, both being negroes; and that for several years before the killing the defendant and the deceased had lived unhappily together, and had frequent quarrels and fights because of "the alleged (by the defendant)

improper intimacy" of the deceased with one Richard Glover, another negro man. On cross examination of one of the State's witnesses the defendant asked him, whether he had'ever seen, or knew of any improper intimacy between the deceased and Richard Glover. The witness having answered in the negative, he was then asked by the defendant, whether he had ever heard the defendant say anything about any improper intimacy between the deceased and said Glover. To this question the State objected. The defendant's counsel having stated, in reply to a question asked by the court, that it was not intended to elicit by the question propounded to the witness anything said by the defendant at the time of the killing, the court sustained the objection made by the State, and refused to permit the question to be answered, and the defendant excepted.

THOS. SEAY and JAS. E. WEBB, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—The practice was settled by this court in *Kimbrough's case*, 62 Ala. 248, that the court below should not delay the empaneling of a jury in the trial of a capital case, because some of the persons, whose names were on the *venire* served on the prisoner, were absent from the court room, being engaged in deliberating upon their verdict in another cause. The statute authorizing a special *venire* to be summoned (Code, § 4874), and directing a list of such persons to be served on the prisoner, "including *the regular jury*" (Code, § 4872), does not contemplate or require the procrastination of criminal proceedings in actual progress for such a purpose, although the members of the absent jury constitute a part of such special *venire*. So in *Johnson's case*, 47 Ala. 10, it was held that the court is not bound to send for an absent juror, who, having been duly summoned in a capital case, fails to answer when his name is called, although he was then in the city, near at hand.

Under these rulings, which we recognize as indicating the proper practice, there was no error in the action of the court refusing to send for such of the jurors as were engaged in the trial of the McCoy case, whose names were drawn during their detention from the court room.

It is insisted, however, by appellant's counsel, as nine of these jurors, whose names were drawn during their necessary absence, returned before the process of empaneling the jury in the present cause was completed, the prisoner was entitled to have their names replaced in the hat from which they were drawn, for the purpose of enabling him to select the remainder of the panel from them.

[Shelton v. The State.]

Without deciding this question, we are of opinion that the prisoner has *waived* any right to except to the action of the court touching this matter. The bill of exceptions shows that the court offered to take this course immediately upon the return of these nine jurors, and that the defendant, by his counsel, *expressly interposed an objection* to such action on the part of the court. We think this was a waiver of the right, if it existed. The principle announced in *Leonard's case,* 66 Ala. 461, is a sound one, that an exception can not be based on a ruling of the court, which was induced by the objection of the party so excepting. Exceptions touching the same matter, which are repugnant, are not allowable. It is not permissible for a party, in the progress of a cause, to oppose the adoption of a certain course, and immediately thereafter to take exception to the refusal of the court to revoke its ruling, thus made at his own instance. If such proceedings were tolerated, judicial tribunals might easily be transformed into schools for the practice of artifice, rather than forums for the administration of justice. We may add that, under the peculiar facts of this case, we can not permit ourselves to doubt the integrity of purpose on the part of the learned counsel in this procedure, in view of the grave doubts that might well exist, as to the proper course to be pursued in perfecting the organization of the jury.

We see no error in the order of the court directing the sheriff to serve a copy of the indictment and of the special *venire* upon the prisoner. The direction is to "furnish the defendant, in his own person, with a list of the names of the persons so summoned, including those *summoned for the regular juries* for said second week, and a copy of the indictment in this case." The language of the statute is, that the "court must make an order, commanding the sheriff to summon not less than fifty, nor more than one hundred persons, including those *summoned on the regular juries* for the week, or term, when the term does not exceed one week."—Code, 1876, § 4874. *The order to summon the venire* is in accordance with this section of the Code. Section 4872 of the Code gives the defendant a right to have service on him of "a copy of the indictment and a list of the jurors *summoned for his trial, including the regular jury.*"

We have repeatedly held, and the rule is now firmly settled, that the record need not show affirmatively that the prisoner was duly served, as required by this statute, with a copy of the indictment and *venire.* In the absence of any objection on that ground, such service will be presumed to have been properly and regularly made.—*Spicer's case,* 69 Ala. 159; *Paris v. The State,* 36 Ala. 232; *Rash v. The State,* 61 Ala. 90.

It is insisted, however, that there is a distinction between

"those summoned *on* the regular juries," as these words appear in section 4874, and "those summoned *for* the regular juries," as this phrase appears in the order of the court directing a service of the *venire* on the prisoner.    In our judgment these two phrases mean substantially the same thing.    It is true that in *Floyd's case*, 55 Ala. 61, where the order for a *venire* was made *after* the arrival of the day when the regular juries are required to be in attendance, the cause being set for the week during which the order was made, the list served on the prisoner, it was held, was required to include only those regular jurors "*in attendance*," and not those who, though summoned as regular jurors, were excused or discharged when the jury was organized.    We are free to say, that we do not approve the soundness of the reasoning adopted in that case, although we are not disposed to dissent from the conclusion reached.    It might well have been held, that the phrase—"including the *regular jury*"—as used in section 4872 of the Code, meant such of the jury as were "*in attendance*" only, within the meaning of those words as they appear in section 4878, without adopting the construction which seems to have been placed on section 4874 of the Code.

The principle of *Floyd's case*, however, can not be extended beyond the strict reason upon which it is based.    It must be limited in its application to those cases, where the trial is set, and the order made, *at a time when the regular juries are summoned to be in attendance*.    It is then quite practicable to include in the list or *venire* only those who are actually "in attendance," and would be futile to included any others, as the law is presumed never to require the doing of a useless thing.

But the reason of this rule of construction, upon which alone *Floyd's case* can be sustained, has no application to those cases where the order for the *venire* is made and the trial set at a time before the arrival of the particular day when the regular juries are required to be in attendance.    The sheriff can not then possibly know which of the regular juries will be in attendance, and which of them will be absent.    He can only know the persons who are *actually summoned*, and it is sufficient, if he includes these among the list of names constituting the *venire*.    This is, to our mind, the plain meaning of the statute, and this construction is sustained by the long practice of our circuit courts, extending far back in the history of our State, and, we may say, originating contemporaneously with the original enactment of the statute.

The declaration of the defendant, as to an alleged improper intimacy between the deceased wife and one Glover, was not admissible evidence in the cause, being shown not to have con-

[Smith.v. The State.]

stituted any part of the *res gestæ* of the homicide.—*Billingslea's case*, 68 Ala. 486.

We discover no error in the record, and the judgment of the circuit court must be affirmed.