# DeArman *v.* The State.

## *Indictment for Murder.*

1. *Applications for continuance, and admission as to testimony of absent witness ; what is revisable.*—Applications for a continuance, or requiring an admission as to the alleged testimony of an absent witness, are addressed to the discretion of the trial court, and its action is not revisable on error or appeal.

2. *Exception to ruling or action invoked by party excepting.*—No exception can be based upon any ruling or action of the court below which was induced by the request or objection of the party excepting.

3. *Special venire ; when required or authorized.*—A special *venire* is only authorized, or necessary, in capital cases (Code, § 4874); and under

[DeArman v. The State.]

an indictment for murder, the defendant having been convicted, on the first trial, of murder in the second degree (which is not a capital offense), he is not entitled to demand a special *venire* on his second trial, if the former judgment is properly pleaded.

4. *Former conviction, or acquittal ; how pleaded and tried.*—A former conviction or acquittal must be specially pleaded ; and when so pleaded, the issue joined on it must, properly, be tried and determined, before the issue on the plea of not guilty is submitted to the jury.

5. *Malice and self-defense ; charges as to.*—A homicide can not be committed with malice and premeditation, and yet in self-defense ; and charges asked, asserting, by implication, that the defendant is entitled to an acquittal on the ground of self-defense, although he acted with malice and premeditation, are contradictory, self-repugnant, and calculated to mislead.

6. *Retreating to avoid homicide ; charge as to.*—Whether the party assailed could have retreated conveniently and safely, without apparently putting himself at a probable disadvantage, is a question of fact for the decision of the jury ; and a charge asked, which asserts as matter of law, on certain facts hypothetically stated, that he was not bound to retreat, is properly refused.

FROM the Circuit Court of Calhoun.

Tried before the Hon. LEROY F. BOX.

The defendant in this case, John A. DeArman, was indicted for the murder of Seaborn J. Crook, by shooting him with a gun, and, on the first trial, was convicted of murder in the second degree ; but the judgment was reversed by this court, and the cause was remanded, as shown by the former report of the case. 71 Ala. 361. On his second trial, at the January term, 1885, the defendant reserved a bill of exceptions, as follows : "At the last term of the court, it was ordered by the court, in the presence of the defendant and the solicitor, and with their consent and concurrence, and for the convenience of the parties, that the cause should be called on Monday of the second week of the term ; the court then announcing that, inasmuch as there had been several continuances of the cause, both parties would be expected to be ready for trial at the present term ; and offered to give compulsory process to either party, or to both, to procure the attendance of witnesses at the present term. No such process was asked for by the defendant. At the present term, the case was accordingly called on Monday of the second week, when the defendant stated to the court, through his counsel, that he did not know whether or not his witnesses were all present, but, whether they were or not, he was unwilling to go to trial on that day, because no day for the trial had been set by order of the court made at this term, and no special jury had been summoned for the trial ; and the defendant demanded a special jury, as in capital cases. Thereupon, the court appointed Wednesday of the second week for the trial, and made an order for summoning a special jury, as shown by the record ; and, at the same time, the court notified the parties

[DeArman v. The State.]

that they would be expected to be ready for trial on Wednesday, and proposed to give the defendant compulsory process to procure the attendance of his witnesses; but the defendant stated, through his counsel, that he did not want such process. When the cause was called for trial on said Wednesday, the State announced ready, and the defendant then moved the court to continue the cause, on account of the absence of William Poland, who had been duly summoned as a witness; but the court refused to grant said motion. The defendant then offered to show due and legal diligence to procure the attendance of said witness, and that he was not absent by his procurement or consent; and requested the court to put the State on the admission of what he expected to prove by said witness, if he were present, as shown by his testimony on the former trial, embodied in the bill of exceptions then reserved; and stated to the court that he was ignorant that said witness would not be present, until his name was called and he failed to respond; and asked that the State be put upon a showing as to the witness. The court declined to put the State on the showing or admission as asked; and stated that the refusal was not on the ground that diligence had not been exercised, nor on the ground that the testimony of the witness had not been reduced to writing and sworn to; and stated to defendant that he should have compulsory process for said witness, if he desired it, and that the trial would be delayed, if necessary, to procure the attendance of said witness. But the defendant declined to take such process, and excepted to the refusal of the court to put the State on the admission of what said witness would swear. . . During the trial, and while the defendant was introducing and examining his witnesses, when said Poland was called, he appeared in court, and was introduced and examined as a witness by the defendant."

The defendant made a similar application on account of the absence of "sixteen other witnesses," who had been duly summoned, and had been examined as witnesses on the former trial, to prove the character of the deceased as a violent, turbulent, and dangerous man; and asked that the State be put on an admission of what said absent witnesses, if present, would swear; and the bill of exceptions further states, in this connection, that during the progress of the trial, while the defendant was introducing and examining his witnesses, "several of said absent witnesses, when they were separately called, appeared in court, and were introduced and examined as witnesses by the defendant."

The defendant then pleaded not guilty, and the verdict on the former trial as an acquittal of murder in the first degree, and the trial proceeded on issue joined on these pleas; the

[DeArman v. The State.]

judgment-entry only reciting, " issues being joined, thereupon came a jury," &c., who returned·a verdict finding the defendant guilty of manslaughter in the first degree, and fixing his punishment at confinement for four years in the penitentiary. The evidence adduced on the trial, as set out in the bill of exceptions, which purports to state " all that the evidence tended to prove," showed that the deceased was shot and killed by the defendant, on Tuesday morning, August 16th, 1881, in front of the hotel building in the town of Jacksonville in said county ; that the defendant was sitting on his horse at the time, having his gun lying across the saddle in front of him, and fired without raising his gun ; that the defendant had ridden into town that morning, having his gun before him and a horn around his neck, and followed by his dogs, and while sitting on horseback in front of, or near a liquor saloon, the deceased crossed the street within fifty feet of him, entered a store, came out with three Springfield rifles, and went to the entrance of the hotel, where he set down the rifles in the hall, and approached the defendant with a large hickory stick in his hands ; and after some words between them, as to the substance of which the witnesses differed, he was not more than five feet from the muzzle of the defendant's gun when the fatal shot was fired, which killed him almost instantly. The deceased was the town marshal of Jacksonville at the time he was killed, and was a young man, large, stout and active ; and the defendant introduced evidence of his character as a violent, turbulent, and dangerous man, especially when under the influence of liquor. The defendant introduced, also, evidence of threats made against him by the deceased, on different occasions, which were communicated to him before the killing ; and that one George Brown had said to him, a few minutes before the shooting : " *You had better look out ; I heard Seab. Crook say this morning, that he would kill you if you came to town to-day.*" On the other hand, the State introduced evidence of the defendant's declarations, after the killing, " *I came here to kill you, and, by God, I've done it ;* " or, " *I have done what I came to do : I came to kill you, and, God damn you, I've done it ;*" and at another time, after his arrest : " *I've done wrong. I expect they will penitentiary me, or hang me ; I don't care a damn which. I don't intend to employ any lawyer. I consulted my family about it last night, and it was all right. Seab. Crook beat me up once, and broke two of my ribs, and I am an old man.*"

The defendant asked the following charges to the jury, which were in writing, and each of which was refused by the court, exceptions being duly reserved to their refusal :

" 1. Although the jury may believe, from the evidence, that

[DeArman v. The State.]

the defendant killed Crook with premeditation, and with malice, yet, if they believe, from all the evidence, that he killed Crook in self-defense, or if they have any reasonable doubt as to whether he killed Crook in self-defense, they must give the defendant the benefit of this doubt, and, in either case, must acquit him.

"2. It is not every premeditated and malicious killing that is murder—the killing must also be unlawful; and if one person kills another in self defense, such killing is not unlawful. Then, although the jury may believe that the defendant killed Crook with premeditation and malice, yet, if they further believe, from all the evidence in the case, that he killed said Crook in self-defense; or, if the jury have a reasonable doubt, upon all the evidence, whether he killed said Crook in self-defense, they must give the defendant the benefit of this doubt, and must, in either case, acquit him.

"3. Although the defendant may have killed Crook with malice and premeditation, yet, if the jury believe, from all the evidence, that such killing was not unlawful, then such killing is not criminal: a killing is not unlawful that is done in self-defense.

"4. If the jury believe, from the evidence, that Crook had, for some time prior to the killing, and in the spring of 1881, threatened to kill the defendant; and that this threat had been communicated to the defendant soon afterwards; and that Crook had beat the defendant over the head with a pistol, and, on the Friday before the killing, had threatened to kill the defendant; and further, that on the morning of the killing, and an hour before the killing, he threatened to kill defendant if he came to town that day; and that defendant did come to town that day, and this threat was communicated to him just a few minutes before the killing; and that Crook advanced towards defendant with a gun or guns, and was a man of dangerous and resentful character, and of bad character for peace and quiet; then defendant need not leave the town, or secrete himself, to avoid meeting Crook, but might go in the direction, and where Crook was, provided it was a public place; and if Crook then made any demonstration to carry his threat into execution, as by an attempt to draw a pistol, then the defendant need not retreat, but the law permitted him to use all reasonable means to free himself from the apparent danger; and if he used no more means than necessary, the jury must acquit him."

After conviction, the defendant moved in arrest of judgment, on the ground of error in the several rulings to which, as above stated, he had reserved exceptions, and "because the court erred in the order directing the sheriff to summon the special *venire* for the trial of this case, in this: that said order

[DeArman v. The State.]

directs the sheriff to summon sixty persons from the qualified citizens of the county, including the regular jurors summoned for the week, when it should have directed him to summon sixty persons from the qualified citizens of the county, including those summoned and in attendance for the week, and the regular jurors summoned for the week were not named in the list of the special jury." The court overruled the motion, and the defendant excepted.

GEO. W. PARSONS, and WM. H. DENSON, for appellant.

T. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—It is a matter resting entirely within the discretion of the trial court, to continue or refuse to continue causes, civil or criminal, and such action can not be revised on error. And the rule applicable to putting the State, in criminal causes, to the admission as to what an absent witness of a defendant would testify, if present, is necessarily the same. The primary court has a discretionary power to require either party to make a proper showing, under oath, as to what he expects to prove by an absent witness, and what diligence he has used to obtain his testimony; and if the adverse party refuses to admit what it is alleged such absent witness would swear, the practice is not to continue the cause on account of the absence of such testimony. There is nothing in the action of the court touching these matters which is subject to our review. And if it were otherwise, we are not prepared to say that its discretion has not been exercised, in every particular, so as to be entirely free from criticism.—*Peterson v. The State*, 63 Ala. 113; *Ex parte Jones*, 66 Ala. 202; Rules of Practice, No. 16, Code, 1876, p. 160.

2. Whether the Circuit Court erred, under the peculiar circumstances of this case, in ordering a special *venire* of jurors to be summoned for the trial, in accordance with section 4874 of the Code (1876), is one of the questions raised by the record, and urged upon our consideration. It is a sufficient answer to this inquiry, that the court had jurisdiction to grant this order, and it was granted in response to an express demand for such a jury, made by the defendant prior to entering upon the trial; and no exception can be based upon any ruling of a court which was induced by the request or objection of. the party excepting. Our past decisions fully commit us to this salutary principle. *Shelton v. The State*, 73 Ala. 5; *Leonard's Case*, 66 Ala. 461.

3. We may add, however, that no difficulty can arise, in similar cases in the future, if the proper practice is enforced. The indictment is for murder, and to this the defendant pleaded

"not guilty," and "former acquittal" of murder in the *first*
degree, at a previous trial of the same cause in the year 1882.
Special *venires*, under section 4874, are authorized only where
a defendant is charged with a capital offense. Murder in the
first degree is a capital offense, but not so with murder in the
second degree. Now, a former acquittal or conviction is
required, under our practice, to be specially pleaded. This was
settled in *Rickles v. The State*, 68 Ala. 538, and had long been
the uniform practice in this State. And when such special plea
is interposed, it has been held irregular to submit an issue upon
it, and upon that of not guilty, for simultaneous determination
by the jury. The issue joined on the special plea must first
be tried and decided.—*Moody v. The State*, 60 Ala. 78 ; *Foster
v. The State*, 39 Ala. 229. If the sufficiency and truth of this
special plea is first tried, and it is fully sustained, the effect is
to eliminate entirely from the indictment, and from the case,
the higher grade of the offense of which the defendant was
acquitted, and the indictment will stand as a charge only of the
lesser offense involved in it.—*Bell and Murray v. The State*,
48 Ala. 684 ; *Mitchell's Case*, 60 Ala 26. If the special plea
is not sustained, being permitted to plead over, the defendant
will, of course, be tried upon the original indictment, without
any modification of the crime charged by it.—Whart. Cr. Pl.
& Pr. (8th Ed.) § 478. A strict observance of these rules, as we
have said, will leave no room for any trouble in solving like
questions in the future.

4. The first three charges in the record, requested by the
defendant, were properly refused by the court, because they
were repugnant and misleading. Each asserts the proposition,
at least by implication, that one may kill another with *malice*
and *premeditation*, and yet do so in self-defense, so as to be
acquitted of all criminality. Malice, or, as it is commonly called,
malice prepense, or aforethought, is the chief characteristic of
murder, and has been said to be the grand criterion by which
it is distinguished from any other species of homicide.—1 Rus-
sell on Cr. (9th Ed.), 667. It is indicative of a wicked,
depraved, and malignant spirit—a heart regardless of social
duty, and deliberately bent on mischief.—Foster, 256. And it
can scarcely mean less than an intent from which flows an un-
lawful and injurious act committed without legal justification.
1 Bish. Cr. Law (7th Ed.), § 429. Self-defense is the creature
of necessity, and a killing in self-defense must be a killing from
necessity, and not from malice and with premeditation. " In
all cases of homicide excusable by self-defense," says Mr. Rus-
sell, in his work on Crimes, " it must be taken that the attack
was made upon a sudden occasion, and *not premeditated*, or *with
malice ;*" and after observing that the person who kills another

[DeArman v. The State.]

in his own defense should have retreated as far as he conveniently and safely could have done, to avoid the violence of the assault, before he turned upon his assailant, the same author adds, that "in no case will a retreat avail, if it be feigned, in order to get an opportunity or interval to enable the party to renew the fight with advantage."—1 Russ. Cr. (9th Ed.), 889; *People v. McLeod*, 1 Hill (N. Y.) 377; s. c., Cases of Self-defense, Hor. & Thomp. 792. So, as said by Hawkins, "if one man assault another with malice prepense, and, after driving him to the wall, kill him there in self-defense, he is nevertheless guilty of murder in respect of his first intent."—1 Hawkins P. C., c. 31, section 26; Roscoe's Cr. Ev. 753; *DeArman v. The State*, 71 Ala. 361. It is the sheerest solecism to say, that one has premeditatedly and maliciously killed another in self-defense. It is manifest that the charges in question, in the light of these familiar principles, are self-contradictory and repugnant, and were properly refused because misleading in their tendency.

5. There are, without doubt, cases of emergency, when no duty devolves upon one who is feloniously and forcibly assaulted by another with a deadly weapon, to decline combat by retreat. The instances must be few, however, and the evidence must be clear and free from all conflict, where the court, if ever, is permitted to make such a deduction. We have repeatedly declared the rule in effect to be, and the practice has commonly been, to submit to the jury, as a question of fact, the inquiry as to whether the party assailed could have conveniently and safely retreated without apparently putting himself at a probable disadvantage.—*Story's Case*, 71 Ala. 329; *DeArman's Case*, Ib. 351; *Tesney's Case*, at the present term; 3 Green. Ev. § 116; 1 Russ. Cr. 889. The last charge requested by the defendant was defective, in withdrawing from the jury, and devolving on the court, the determination of this inquiry. For this reason it was properly refused, if not also for other sufficient objections.

We discover no error in the record, and the judgment must be affirmed.