# Adams *v.* The State.

## *Indictment for Murder.*

1. *Organization of jury in capital case.*—Under the provisions of the statute regulating the manner of drawing and summoning special juries in capital cases (Code, § 5004), a special venire, composed of not less than twenty-five nor more than fifty names, must be drawn for each capital case; and it is error for the court to draw one special venire for the trial of two defendants, separately indicted for separate and distinct felonies.

2. *Same.*—Under the provisions of the statute, it is the right of a defendant indicted for a capital offense to have a jury selected from all the persons summoned as special jurors, who are in attendance and who are competent (Code, §§ 5004, 5005, 5009); and it is not only error for the court to draw one special venire for the trial of two defendants indicted for separate and distinct felonies, whose trials are set for the same day, but it is also error for the court, after having selected a jury from the special and regular juries, for the trial of one of the defendants, to deny the other defendant the right of passing on said jurors in the organization of the jury for the latter's trial.

3. *Homicides; charge to the jury.*—On a trial under an indictment for murder, a charge is free from error which instructs the jury that "If the jury have a reasonable doubt as to whether the killing was done deliberately, or as to whether it was done premeditatively, then they can not find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done in malice, then they can not find the defendant guilty of murder in either degree, but only manslaughter at most; and if after considering all the evidence, the jury have a reasonable doubt as to

[Adams v. The State.]

defendant's guilt of manslaughter, arising out of all the evidence, then they should find the defendant not guilty of any offense," and such charge should be given at the request of the defendant.

4. *Same; same; burden of proof.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that "The burden of proof is not shifted from the State to the defendant, and the presumption of innocence abides with the defendant, until all the evidence in the cause convinces the jury to a moral certainty that the defendant can not be guiltless." (DOWDELL, J., *dissenting.*)

5. *Charge of court to jury; should be clear and certain.*—Charges which the court are requested to give should be expressed in clear, certain and intelligent language; and if not so expressed are properly refused.

6. *Abstract and argumentative charges* are properly refused.

7. *Homicide; charge to the jury.*—On a trial under an indictment for murder, where there is evidence tending to show that the defendant brought on the difficulty, a charge is erroneous and properly refused which instructs the jury that "If one assaulted suddenly and under the maddening influence of blows slays his assailant, and there is nothing else in the transaction, this is manslaughter and not murder."

8. *Same; same; self-defense.*—On a trial under an indictment for murder, charges which hypothesize self-defense in general terms, or which hypothesize one or more elements of self-defense, and which omit to set out all the constituent elements of self-defense, are erroneous and properly refused.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The appellant, Warren Adams, was indicted and tried for the murder of Coston Edwards, was convicted of manslaughter in the first degree, and sentenced to the penitentiary for ten years.

The defendant moved the court to quash the venire in this case upon the following grounds: "1. Said venire was not drawn in accordance with the law. 2. This defendant was arraigned on Monday, the 2d day of September, 1901, and at the same time was arraigned one Dan McGuire, also charged with murder in the first degree; that on said September 2d, 1901, the court ordered that the clerk of said court should draw from

the jury box forty-five names, which, together with the regular panel of jurors for this week of said circuit court should constitute the special venire, both in the case of *The State v. Warren Adams* and the case of *State v. Dan McGuire*, both of whom were under indictment for capital offenses, but, separate and distinct and in no way connected, one with the other, and said venire was drawn contrary to law. 3. Because there was not a venire drawn for this case only, but said venire was drawn for this case and also case of *State v. Dan McGuire*, and it is attempted in this case to make said one venire answer for and constitute the venire for each and both of said two cases, and it is contrary to law. 4. No venire was drawn for this case alone as required by law, but said venire was drawn for the case of this defendant, and also that of *State v. Dan McGuire*, and said venire constitutes the venire for both of said cases, and this defendant moves to quash the same." The motion to quash was overruled, and the defendant duly excepted.

Before the drawing of the jury the defendant objected to being required to select a jury from said venire, and objected to being placed on trial in said cause, upon the following grounds: "1. Said venire in said cause was drawn as follows: The court had on the 2d September, 1901, this defendant and one Dan McGuire, both charged with murder in the first degree, arraigned and when arraigned, each plead not guilty; the court then ordered the clerk of said court to draw from jury box forty-five names, which said forty-five names were drawn to serve for cases of *State v. Warren Adams* and also case *v. Dan McGuire*, said forty-five names, together with the regular panel of jurors for this the second week of said court to constitute the venire for both cases of *State v. Warren Adams* and *State v. Dan McGuire*, and the court then set said two cases for same day, to-wit, Monday, September 9th, 1901, and said 45 names so drawn, together with the regular panel of jurors for this week does constitute the venire for both of said cases. 2. And this defendant further objects to being placed on trial and to said venire, and says

that twelve of those so constituting the venire in said two cases are now engaged in the trial of the case of *State v. Dan McGuire*, and can not now be called to serve upon his case, and this defendant makes oath that the facts herein stated are true—best of his knowledge and belief." Each of these objections were overruled, and the defendant separately excepted.

On the trial of the cause, the State introduced evidence tending to show that the defendant was guilty as charged in the indictment. There was evidence introduced in behalf of the defendant tending to show that the homicide was committed in self-defense. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked, (the charges are copied in the order in which they appear in the bill of exceptions) : (14.) "If the jury have a reasonable doubt as to whether the killing was done deliberately, or as to whether it was done premeditatively, then they can not find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done in malice, then they can not find the defendant guilty of murder in either degree, but only of manslaughter at most; and if after considering all the evidence, the jury have a reasonable doubt as to defendant's guilt of manslaughter, arising out of all the evidence, then they should find the defendant not guilty of any offense." (9.) "In this cause the burden of proof is not shifted from the State to the defendant, and the presumption of innocence abides with the defendant until all the evidence in the cause convinces the jury to a moral certainty that the defendant can not be guiltless." (13.) "No greater burden rest upon the defendant when tried for a criminal offense, than to create a reasonable doubt in the minds of the jury of his guilt and he is entitled to it under the defense of self defense, or any other ground of defense." (1.) "I charge you, gentlemen, that when no more appears from the evidence in a case than an unlawful and

intentional killing of an human being, although without excuse or mitigation, the homicide is such a case to be no more than murder in the second degree." (22.) "If the conduct of the defendant in this case was consistent with his innocence, then he is not guilty of any offense." (6.) "The court charges the jury that though evidence tending to show flight is a matter to be considered by the jury, yet, it is of weak and inconclusive character, it may not be evidence of guilt at all." (8.) "If one assaulted suddenly and under the maddening influence of blows slays his assailant, and there is nothing else in the transaction, this is manslaughter and not murder."

WORTHY & GARDNER, for appellant.—The court erred in overruling the defendant's motion to quash the venire and his objection to being put to trial.—*Mitchell v. State,* 129 Ala. 23; *Evans v. State,* 80 Ala. 4; *Thompson v. State,* 122 Ala. 12; *Childress v. State,* 122 Ala. 21.

The court erred in refusing the several charges requested by defendant.—*Compton v. State,* 110 Ala. 23; *Stoneking v. State,* 118 Ala. 70; *Henson v. State,* 112 Ala. 46; *Brown v. State,* 109 Ala. 89; *Williams v. State,* 98 Ala. 22; *Cohen v. State,* 50 Ala. 108; *Bain v. State,* 74 Ala. 38; *Bodine v. State,* 129 Ala. 106; *Scales v. State,* 96 Ala. 75; *Crawford v. State,* 112 Ala. 33; *Smith v. State,* 68 Ala. 430; *Roberts v. State,* 68 Ala. 156.

CHAS. G. BROWN, Attorney-General, for the State. There is no merit in the motion to quash, or plea in abatement to venire.—*Chamblee v. State,* 78 Ala. 466; *Thomas v. State,* 124 Ala. 48.

DOWDELL, J.—Section 5004 of the Criminal Code under which the special *venire* in this case was drawn, provides as follows: "When any capital case or cases stand for trial, the court shall, at least one entire day before the same are set for trial, cause the box containing the names of jurors to be brought into the court-room, and after having the same well shaken, the pre-

siding judge shall then and there publicly draw therefrom not less than twenty-five nor more than fifty of such names *for each capital case* [italics are ours, and for purposes that will appear hereafter], a list of which shall be immediately made out by the clerk of the court, and an order issued to the sheriff to summon the persons so drawn to appear upon the day set for trial, in like manner and under like penalties as be is required to summon grand and petit jurors. If the names in the jury-box should be exhausted before the completion of the drawing of such special jurors, the court shall direct the sheriff to summon from the qualified citizens of the county, the specified number of persons necesssary to complete the number of special jurors ordered by the court."

At the time of setting a day for the trial of the defendant there were two capital cases pending in the circuit court, that of the defendant and one of the State v. Dan McGuire. These defendants were separately indicted and for separate and distinct felonies. Both cases were by order of the court set for trial on the same day, and by order of the court only one drawing of special jurors was had, which together with the regular jurors drawn and summoned for the week of the trial, constituted one and the same special *venire* for the trial of both cases. On the day of the trial a jury of twelve was first selected from the special *venire* for the trial of the defendant Dan McGuire, and thereupon and then the court proceded to the selection of a jury of twelve for the trial of the appellant, all against this defendant's objection. Before a jury had been completed, the names of all of the persons who had been selected for the first jury, were drawn, and as each was drawn, the slip containing the name, was directed by the court to be laid aside, and the defendant denied the right of passing on said jurors by challenging or accepting.

From the foregoing statement it is apparent that the defendant did not have the number of jurors from which to select a jury for his trial, which the former order of the court, made in setting a day for his trial gave him, and this by the action of the court. It is

wholly different from, and does not come within the principles and reason of those cases, where one or more of the regular jurors, who constitute in part the special *venire,* may happen at the time of the drawing and selecting of a jury in a capital case, to be engaged in the trial of some other case, as in *Kimbrough v. State,* 62 Ala. 248, and similar cases. As was said in *Evans v. State,* 80 Ala. 6, in such cases, "the ruling is founded on the presumption, that when the legislature provided that the regular jurors in attendance should constitute a part of the *venire,* it was contemplated that some of them might be engaged in the trial of another cause, and that the right of the defendant to have such regular jurors called is subject to the due administration of the law, and does not operate to delay or obstruct the business of the court." The necessities in such cases arise not by any act of the court, but unavoidably in the due administration of the law. But so much cannot be said in the present case. Nor can it be said, that it was within the contemplation of the legislature in the enactment of the statute under which the *venire* in this case was drawn, that any of the *special* jurors drawn on the *venire* might be engaged in the trial of another cause at the time of the drawing and selecting the jury from the *venire* for the trial of the case. The statute provides, that not less than twenty-five nor more than fifty special jurors, may be drawn for the special *venire,* and if one *venire* may be ordered for the trial of two cases, why not for the trial of three cases, or as for that matter four cases; and if the number of special jurors ordered be thirty-six, it would be possible in making up the first three juries of twelve each, from the special *venire,* to exhaust the thirty-six special jurors drawn, leaving to the fourth defendant, not one of the special jurors drawn for his trial, and only the regular jurors from which to select his jury, thereby utterly defeating the purposes of the statute. The question here presented, that is, of drawing one special *venire* for the trial of two separate capital cases, was considered by this court in the case of *Evans v. State, supra,* not under the present statute above set

out, but under a local statute entitled an act "To reg-
ulate the drawing and empanneling of grand or
petit jurors in Dallas county," approved Feb-
ruary 14, 1885, (Session Acts, 1884-85, p. 492).
In construeing the part of this act relating to
the drawing and selecting of a jury for the
trial of a capital felony, it was held to be error to
order one *venire* for the trial of two defendants sepa-
rately indicted for separate and distinct felonies. With-
out repeating all that was there said, with regard to the
manifest operation of the provisions of the statute to
preserve unity, etc., in empanneling a jury, and con-
templating that it shall be a proceeding in the partic-
ular case, individualized and separate from all other
criminal cases pending in the court, it may be here ob-
served, that what was said, applies with equal force
and reason to section 5004 now under consideration.
This section formed a part of the act approved Feb-
ruary 26, 1887, which, as originally passed, excepted
from its provisions certain counties named therein. In
express terms, as originally enacted, and as it now
stands in the Code, it provides for a drawing of spe-
cial jurors *"for each capital case,"* that is, when more
than one capital case stands for trial. Section 5005,
which follows section 5004, directs what shall consti-
tute the *venire* for the trial of a capital case. This sec-
tion provides, that the special jurors so drawn together
with the regular jurors drawn and summoned for such
subsequent week, when set for trial other than a day
of the first week, shall constitute the *venire*. Section
5009 directs the manner of drawing the jury on the
day set for the trial. This section provides that the
names of the jurors summoned for the trial as well as
the names of the regular jurors in attendance, must
be written on slips of paper, folded or rolled up, placed
in a box, or some substitute therefor, and shaken up,
to be drawn out, one by one, in the presence of the court
by some officer designated by the court, until a jury is
completed. It is manifest from these provisions that it
was intended to secure to the defendant the right to
select his jury from the special jurors drawn and sum-
moned for his trial, not from a part of them, but from

all, and likewise from the regular jurors constituting in part the special *venire,* but in case of the regular jurors, subject, of course, to the contingency of one or more of them being at the time engaged in the trial of some other cause.

The case of *Chamblee v. State,* reported in 78 Ala. 466, was decided at the same term as *Evans v. State, supra,* and cites the latter case, differentiating the two cases. The statute under consideration in *Chamblee's case,* was the act approved February 17, 1885 (Session Acts, 1884-85, p. 181). The provisions of this act relative to the drawing of jurors for capital felonies are materially different from the provisions of section 5004 of the Code. Section 10 of this act provided for the drawing of *one* special *venire* from which to select *juries* for capital cases standing for trial.

The statute under consideration in the case of *Thomas v. State,* 124 Ala. 48, was a local statute, applying to Montgomery county. This act in express terms authorized the drawing of one *venire* for the trial of two or more capital cases.

Our conclusion is that the circuit court committed error in ordering one special *venire* for the trial of two separate and distinct cases.

The defendant requested in writing many charges, quite a number of which were refused by the court. Some of the refused charges contained correct expositions of the law, and others did not. According to the order in which they appear in the record, the first refused charge which should have been given is numbered 14. This charge was held good in *Compton v. State,* 110 Ala. 34, and in *Stoneking v. State,* 118 Ala. 70. The only difference between the charge here and the charge in those cases being, that in the latter the language used is—if the jury has a reasonable doubt of defendant's guilt of manslaughter "arising out of *any part* of the evidence;" while the language used in the present charge is—"arising out *of all* of the evidence." The change instead of detracting from the charge tended to make it a more perfect one, and the court erred in its refusal.

Charge No. 9 refused to the defendant is an exact copy of a charge which was held to correctly state the law, in *Smith v. State,* 68 Ala. 430. I think the charge is a correct statement of the law, and I approve the former ruling in *Smith's case, supra.* The majority of the court, at present, however, are of a contrary view and hold that the charge is faulty in that it is misleading in its tendency, and for that reason was properly refused.

If charge No. 13, as copied in the record, is a correct copy of the charge as asked—and we cannot say that it is not—then it can hardly be said to be intelligible. Charge No. 1 is subject to like infirmity. Charge No. 22 is indefinite and uncertain, with tendency to mislead.

The evidence without conflict showed that the defendant after the killing fled from the State, and was apprehended in Arkansas and brought back from that State. This was all of the evidence as to flight—no explanation was offered. Under this state of the evidence, charge 6, whether abstractly good or not, was properly refused.

There was evidence tending to show that the defendant brought on the difficulty, and under this phase of the evidence, charge 8, if bad for no other reason, was properly refused.

Charges hypothesizing self-defense in general terms which omit to set out the constituent elements of self-defense, have been condemned by this court in *Miller v. State,* 107 Ala. 40, and in *Gilmore v. State,* 126 Ala. 20. So also charges hypothesizing one or more elements of self-defense without setting out all of the constituent elements, and asking an acquittal on those hypothesized if believed, should be refused. The refused charges not herein above specially mentioned, are either subject to the infirmities just stated, or are argumentative, or are faulty in misplacing the burden of proof.

It would unnecessarily prolong this opinion to attempt to deal with the refused charges separately. What we have said is sufficient for the purposes of another trial. For the errors pointed out the judgment of the circuit court must be reversed and the cause remanded.

Reversed and remanded.