# Prior *v.* The State.

## *Indictment for Murder.*

1. *Former difficulty, as part of res gestæ.*—When it appears that the deceased was killed in a rencounter with the defendant, caused by the latter's interference in another difficulty, immediately preceding it, between the deceased and a third person, whose quarrel the defendant espoused, the two difficulties constituting but one continuous transaction, it is competent for the prosecution to prove the former difficulty, as explanatory of the homicide.

2. *Self-defense; charges asked, ignoring inquiry as to who brought on the difficulty.*—On a trial for murder, charges asked as to the doctrine of self-defense, ignoring all inquiry as to who was at fault in bringing on the difficulty, are properly refused.

3. *Same; charge asked, ignoring apprehension of imminent danger.*—Charges asked, asserting the defendant's right to kill, "if the deceased attacked him with a knife, and was cutting at him;" or, "if the deceased had him down, and had his knife in his hand," but ignoring the question of a reasonable apprehension of real or apparent danger to life or limb, are properly refused.

4. *Abusive language at time of difficulty.*—As to abusive languge used

by a person assaulted or beaten, at or near the time of the difficulty, which may be good "in extenuation or justification as the jury may determine" (Code, § 4900), the statute applies only to prosecutions for assault, assault and battery, and affray.

5. *Polling jury.*—When, in polling the jury, a juror answers that he agrees to the verdict, without other remark or explanation, this court will not presume, for the purpose of imputing error, that he wished to make explanation, merely because the defendant's counsel asked that he be allowed to explain, and the court refused it, the juror himself saying nothing.

6. *Murder and manslaughter.*—To reduce a homicide from murder to manslaughter, the killing must not only have been perpetrated without malice, express or implied, but must also have been done in a sudden heat of passion, upon reasonable provocation, or in mutual combat.

FROM the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The defendant in this case, Nathan Prior, was indicted and tried, jointly with Daniel Lawrence, for the murder of Man Copeland, by shooting him with a pistol; was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of two years, Lawrence being acquitted. On the trial, as the bill of exceptions shows, the State having introduced one Mobley as a witness, who testified that he was present at the time of the difficulty between the deceased and the defendant, which occurred at the house of one Dinkins, where they were attending a "party"; the solicitor "asked the witness to state how the difficulty began; to which the witness answered, that the deceased had a difficulty with John Warren, and Warren was cutting at him with a knife. The defendant's counsel objected to this, and moved the court to exclude what witness said about Warren cutting at the deceased, as witness could not go into particulars of the difficulty with a third party. The court overruled the objection, but said that it would be no evidence against the defendant, and instructed the jury, at the time, that they should not consider it as evidence against the defendant; and the defendant excepted." The witness, continuing, said : "Copeland kicked and pushed Warren out of the house. Nathan Prior took it up. Copeland asked, if he took it up; and Prior said, he did. Copeland shoved and kicked him out of the house. Prior stayed out about fifteen minutes, and came back with a pistol in his hand, pointing at the deceased, and said, ' *Man Copeland, I will not be run over in any such way* '; and he had the pistol drawn on the deceased, who looked surprised. Rena Pearson caught hold of Prior, and said, ' Don't shoot in here among my children ', and turned him around. Copeland caught hold of Prior, and was crowding or shoving him backwards, when Prior fell over a chair, and, as he fell, he shot." Other witnesses testified, in substance, to the

same facts, and there were no material discrepancies in the testimony.

The defendant asked the following charges, which were in writing, and each of which was refused by the court, exceptions being duly reserved to their refusal:

" 2. If the jury believe, from the evidence, that the defendant was in imminent danger of life, or of great bodily harm being caused or done by the acts of the deceased at the time the shooting occurred, they must find the defendant not guilty.

" 3. If the facts and circumstances attending the homicide were of such nature as to reasonably impress the mind of the defendant that he was in great danger of peril to life, or of great bodily harm, they must find him not guilty.

" 4. To constitute murder aforethought, the defendants must have killed the deceased, knowing at the time what they were doing. If it was done in the heat of passion, it would not be murder; there can be no murder, where the killing is done in the heat of passion.

" 5. If the jury believe, from the evidence, that the deceased brought on the difficulty, and put Prior out of the house; and that Prior went back into the house, with a pistol in his hand, and told the deceased that he would not be run over; and the deceased attacked him again, with a knife in his hand, and was cutting at him, then the defendant had a right to shoot.

" 6. If the jury believe, from the evidence, that the difficulty was brought on by the deceased, and that he kicked or pushed the defendant Prior out of the door; and that the defendant came back, with a pistol in his hand, but did not attack the deceased ; and that the deceased renewed the attack on the defendant, and had the defendant down, and had his knife in his hand; then the defendant would be justified in shooting the deceased.

" 9. If the jury have a reasonable doubt as to whether, at the time of the shooting, the deceased was assailing the defendant with a knife, in such a manner as to reasonably impress the defendant with the necessity of killing the deceased in order to save his own life, or to save himself from great bodily harm, they must acquit the defendant.

" 14. If the jury believe, from the evidence, that the defendant, after returning into the house where the deceased was, and in the presence of the deceased, with a pistol in his hand, remarked, '*I do not like the way I have been treated; now, God damn you, help yourself;* ' such words do not, of themselves, justify an assault on the party using them, by the party to whom they were addressed."

When the jury returned with their verdict, the defendant asked that they might be polled; " whereupon, the court asked

[Prior v. The State.]

the first juror, B. J. Cotten, '*Is that your verdict?*' He answered, '*Yes, I agree to it.*' The court asked the next juror, if that was his verdict. The defendant's counsel stated to the court, that the juror Cotten wanted to explain, and asked that he be allowed to do so; but said juror did not ask the court to allow him to explain, nor did he say anything about wanting to explain, nor anything at all. The court kept on polling the jury, and, in this way, refused the request of said counsel; and the defendant excepted."

The name of the appellant's counsel, if any appeared in this court, is not shown by either the record or the dockets.

T. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—1. The defendant was indicted for the murder of one Copeland, and was convicted of manslaughter in the first degree.

The Circuit Court, upon the trial, allowed a witness, by way of introduction to the facts attending the killing of deceased, to advert in general terms to a difficulty between the deceased and one Warren, immediately preceding the one with the defendant, the former of which is shown to have led to the latter. In this we think there was no error, the two affrays being so closely connected as to obviously constitute but one and the same transaction. The interference of the deceased in the first seems to have led to the second, and a proper understanding of the one is necessary in order to comprehend the other. The two embrace but one continuing transaction, and, occurring at the same time and place, together constitute but the *res gestæ* of a single principal fact.

2. We discover no error in the refusal of the court to give the various charges requested by the defendant. Many of these charges entirely ignored all inquiry as to who was at fault in bringing on the difficulty—a fact which should have been submitted to the determination of the jury. This objection applies to charges numbered two, three, and nine respectively.

3. Charges numbered five and six are defective, in failing to predicate the defendant's right to kill in self-defense, among other things, upon the condition of his reasonably apprehending a real or apparent danger of life or limb. The mere fact of his being attacked by deceased, and his being cut with a knife in his hands, obviously would not, without more, make the homicide excusable.

4. The state of facts under which opprobious words, or abusive language, used by a person who is assaulted or beaten, at or near the time of the assault or affray, may be good in extenua-

tion or justification, is a matter left by the statute expressly for the determination of the jury; and the statute, moreover, is confined to trials where the indictment is for assault, assault and battery, or affray.—*Taylor v. The State*, 48 Ala. 180; Code, 1876, § 4900; *Brown v. The State*, 74 Ala. 42. The fourteenth charge was, for this reason, properly refused.

5. When the juror, Cotten, was polled, in connection with the other jurors, his reply to the court unquestionably showed his assent to the verdict. If he desired to explain the matter further, he should have made known his wishes to the court before the jury was discharged. We can not assume, for the purpose of putting the court in error, that the counsel for the defendant had any authority to make a request, in behalf of this juror, to be allowed such opportunity for explanation. *Non constat*, but that the juror may have entertained no such desire.

6. To reduce a homicide from murder to manslaughter, the killing must not only have been perpetrated without malice, express or implied, but it must also have been done in a sudden heat of passion, upon reasonable provocation, or in mutual combat. There must be a concurrence of adequate provocation, and of ungovernable passion.—Clark's Man. Cr. Law, §§ 419, 421. The fourth charge was not in harmony with this principle, and was properly refused.

We discover no errror in the record, and the judgment is affirmed.