# Henderson *v.* The State.

### *Indictment for Murder.*

1. *Self-defense.*—A conspiracy on the part of the deceased and another to take the life of the defendant, and an attempt to carry it into effect, do not justify the killing on the ground of self-defense, unless the attempt was attended with an actual or seeming ability to effect its purpose, and the danger was, or appeared to be, so imminent that it could not be otherwise eluded, or, at least, could not be eluded by flight, or other attempted escape, without exposing the party assailed to greater peril.

2. *Same; retreat.*—A charge requested, which instructs the jury that they must acquit the defendant, "if they believe from the evidence that the circumstances at the time of the killing were such as to create in the mind of the accused a reasonable belief of imminent danger to life or limb caused by the deceased," is properly refused, because it "pretermits all mention of other modes of escape which may have been open to

[Henderson v. The State.]

the defendant, and to which, if available, it was his duty to have resorted before taking life."

From the Circuit Court of Pike.

Tried before the Hon. John P. Hubbard.

The defendant in this case, Jack Henderson, was indicted, jointly with Aaron Perdue, for the murder of Dave Mincey, by shooting him with a gun ; pleaded not guilty, was tried on issue joined on that plea, was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of three years and six months. The bill of exceptions purports to set out "substantially all the evidence adduced in the case," but it is not necessary to state it at length. It appeared that the killing took place about twelve o'clock at night, at a house where a number of people were assembled, and engaged in dancing. The witnesses for the State testified, in substance, that the deceased was standing, just before the killing, near the back door of the back room of the house, talking with one Siler, while Aaron Perdue stood near by, having a breech-loading rifle in his hands ; that Perdue handed the rifle to Jack Henderson, the defendant, "who stepped out of the back door, spoke in a loud voice, ' *Get out of the way, or I will shoot you*,' and immediately fired the gun at the deceased," the ball striking him in the breast, and inflicting a wound from the effects of which he died the next day ; "and that the deceased and the accused were perfectly friendly, and had never had any difficulty or quarrel in their lives before the killing took place." The State proved, also, the defendant's confessions, made after the killing, "that he shot the deceased because he was afraid of him, for the reason that the Minceys had cut him to pieces once before." Two witnesses for the defendant, who were present at the house on the night of the killing, testified that, a short time before the deceased was killed, they heard him, with his two brothers and another person, "talking together in a low tone of voice in the yard just in front of the house, and heard said Dave Mincey and Jim Mincey say, ' *We will go into the house where Jack Henderson is playing the fiddle, and tramp on his toes, and push his fiddle, to get up a fuss with him, and cut him to pieces* ;' that said Dave and Jim Mincey went into the house where said defendant was playing the fiddle, and danced near him, but they (said witnesses) did not know whether they tramped on his toes, or pushed his fiddle, or not ; and that they saw said defendant, soon afterwards, running from the front room into the back room, pursued by said Dave and Jim Mincey, the former cutting at him with a knife." Other witnesses for the defendant, who were in the back room at the time of the difficulty, "testified that Jack Henderson ran from the front into

the back room, pursued by Dave Mincey and Jim Mincey, who were running after him, and Dave Mincey cutting at him with a knife ; that Henderson, when near the back door, threw up his hand to fend off the licks of Dave Mincey, and was cut on the hand ; that he snatched the gun from the hands of Perdue as he passed, jumped out of the back door, and fired at said Dave Mincey, who was at the time standing near the back door, with one foot on the floor, and the other on a large block used as a step, and having his knife in his right hand at the time."

The defendant requested the following charges to the jury, in writing : "(4.) If the jury believe, from the evidence, that the deceased and his brother, Jim Mincey, had conspired together to inflict great bodily harm on the defendant, or to kill him, and that the deceased was attempting to carry out that common purpose at the time the fatal shot was fired, they must find the defendant not guilty." "(5.) If the jury believe, from the evidence, that the circumstances at the time of the killing were such as to create in the mind of the accused a reasonable belief of imminent danger to life or limb caused by the deceased, they must find the defendant not guilty." The court refused each of these charges, and the defendant duly excepted to their refusal ; and these are the only rulings presented by the bill of exceptions.

The name of the appellant's counsel, if any appeared in this court, is nowhere shown by the record or dockets.

T. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—Charges four and five, asked for defendant, were severally refused, and the defendant excepted severally. Each is faulty. A conspiracy to take life, and an attempt to carry it into effect, do not, without more, justify the taking of the life of the person thus attempting. Such attempt, to justify a killing, must be attended with an actual or seeming ability to carry it into effect ; and the danger must be, or appear to be, so imminent, as that it can not be otherwise eluded, or, at least, can not be without exposing the party assailed to increased peril, by flight, or other attempted escape. Life must not be taken, except in extreme cases, when there is no other apparent means of escape from what appears to be imminent peril to life or limb. Less than this does not meet the conditions of self-defense.—*Mitchell v. The State*, 60 Ala. 26 ; *DeArman v. The State*, 71 Ala. 351 ; *Storey v. The State*, *Ib.* 329. The fifth charge asked pretermits all mention of other modes of escape, which may have been open to defendant, and which it was his duty to have resorted to, if available, before taking life.

Affirmed.