# Carter *v.* The State.

## *Indictment for Murder.*

1. *Self-defense; duty to retreat.*—It is the duty of a person assailed to retreat, in order to avoid the necessity of killing his assailant, unless he would thereby place himself apparently in greater peril; and the fact that retreat will not place him in less peril, or on better vantage-ground than before, does not excuse him from the performance of this duty.

2. *Same; charges as to, when evidence is conflicting as to fault.*—When there is some evidence tending to show that the defendant was not free from fault in bringing on the difficulty, although the preponderance of the evidence is to the contrary, charges asked, invoking the doctrine of self-defense, but ignoring the question of such fault, are properly refused.

FROM the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

The defendant in this case, James Carter, was indicted for the murder of Daniel Smith, by shooting him with a pistol; was tried on issue joined on the plea of not guilty, convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of seven years. It was shown on the trial, as appears from the bill of exceptions, that the killing occurred at the house of one Charles Smith in said county, on the morning of February 24th, 1886; that the defendant had stopped at the house, in company

[Carter v. The State.]

with one Ed. Kirksey, who was a brother of Charles Smith's wife; that Ed. Kirksey and his brother Ben, who was also at the house, began to quarrel in the house, and went out into the yard to fight, Ben having an open knife in his hand; that the defendant went out, at the request of Mrs. Smith, to prevent them from fighting, and, addressing himself to Ben, said, "*Don't you cut Ed;* if you want to fight, I'd rather do Ed's fighting;" that the defendant, who was standing near the house, " then came walking briskly up, and told Carter *not to jump on Ben*, and, *if he wanted to fight any body, to fight him*," the deceased; that Carter replied, "*I came here with Ed, and I don't propose to see him run over;*" that some other words passed, when Mrs. Smith attempted to get between them, jerking Carter to one side, just as the deceased struck him over the head, or struck at him, with a bridle which he had in his hand; that Carter then fired his pistol, and at the third shot killed the deceased. This was, in substance, the testimony of Mrs. Smith, who was examined as a witness for the prosecution. Ed. Kirksey, a witness for the defense, gave the same account of the difficulty, but further said that the deceased " first threw a rock at Carter, striking him on the head, and then began striking him over the head with the bridle "

The court gave the following charges to the jury, on request of the State's attorney: (1.) "If the jury believe from the evidence, beyond a reasonable doubt, that Carter could have retreated from Smith, when Smith made the assault on him (if they find that Smith did assault him), without increasing the danger to his life or body, the rule of law requires him to retreat, rather than take the life of Smith." (2) "Under the law, the party slaying must be without fault, to make the plea of self-defense available." (3.) "If the jury believe from the evidence, beyond a reasonable doubt, that Carter, after he was assaulted by Smith (if they find that Smith did assault him), could have retreated without increasing the danger from Smith, then the law requires that he should have done so." (4.) "If the jury believe from the evidence, beyond a reasonable doubt, that Carter, by turning his back to Smith in retreating, if he had done so, did not increase the danger to his life or body, or did not increase the danger of being maimed—that is, of losing an eye, an ear, or other member of his body— by a blow from the bridle, or other missile or weapon in the hands of Smith; then the law requires that he should have retreated, rather than take the life of Smith."

The defendant duly excepted to each of these charges as given, and also to the refusal of the following charge, which

[Carter v. The State.]

was asked by him in writing: "If the defendant could not, reasonably and probably, judging from the circumstances surrounding him, have escaped by retreating, saving his life, or saving himself from great bodily harm, he was not bound to retreat, or to attempt to retreat; and if, on consideration of all the evidence, the jury was satisfied, beyond a reasonable doubt, he could not have expected, reasonably and probably, to escape by retreat, then he is entitled to the benefit of the doubt, and must be acquitted."

BRICKELL, SEMPLE & GUNTER, and J. E. BROWN, for appellant.

THOS. N. MCCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The duty of retreat which is imposed by law upon combatants, under certain circumstances, has in view the prevention or avoidance of unnecessary bloodshed. The right of self-defense can not innocently be carried to the last resort of taking human life until the defendant has availed himself of all proper means in his power to decline combat by retreat, provided there is open to him a safe mode of escape—that is, when he can safely and conveniently retreat without putting himself at a disadvantage by increasing his own peril in the combat. Where this can be done, the law assumes that the tendency of the act of retreating will be to make the necessity of taking life less urgent and imperious. The defendant is not excused from the performance of this duty, where it exists, by the fact that he will not be placed on a *better* vantage-ground, or in *less* peril than before. If retreat does not apparently place him in greater peril, he must resort to it as a means of avoiding the necessity of taking life.—*Storey v. State*, 71 Ala. 329; *De Arman v. State*, 71 Ala. 351; *Tesney v. State*, 77 Ala. 33; *Henderson v. State*, 77 Ala. 77; *Harrison v. State*, 78 Ala. 5. The rulings of the court, in giving and refusing certain charges bearing on this point, to which exceptions were taken, were in accordance with this view of the law, and were unobjectionable.

The record contains some evidence from which the jury were authorized to infer that the defendant was not free from fault in provoking the difficulty which resulted in the killing of deceased. There was evidence also to the contrary. We may admit, for the sake of argument, that it preponderates in showing the opposite conclusion. This being true, all charges invoking the doctrine of self-defense, which were requested by the defendant, should have sub-

[Floyd v. The State.]

mitted to the jury the question as to defendant's being at fault, or free from fault, as the case may be, in having brought about the necessity of taking life, which is now pleaded in his justification.—*Ford v. State,* 71 Ala. 385; *Prior v. State,* 77 Ala. 56; *Jackson v. State,* 81 Ala. 33; *Baker v. State,* 81 Ala. 38.

Tested by this principle, the other rulings excepted to are not well taken.

The judgment is affirmed.