# Davis v. The State.

## Indictment for Murder.

1. *Objections to grand jury.*—On the facts shown by the record in this case, which are identical with the facts in the case of *Tanner v. State,* (p. 1); *held,* that the irregularity in the organization of the grand jury, if not a clerical misprision, was cured by statutory provision (Code, § 4445), and not available on error.

2. *Application for continuance, on account of absent witnesses; what is revisable.*—An application for a continuance in a criminal case, on account of absent witnesses, is addressed to the discretion of the trial court, and its refusal is not revisable on error; and if a gross abuse of the discretion would authorize a reversal, such abuse is not shown by the refusal of the court to allow the defendant, in his statement of what the absent witnesses would swear, to include additional declarations as to matters covered by their testimony on the preliminary examination, as preserved by the committing magistrate.

3. *Neighborhood custom, as justifying visit to house without invitation.*—The defendant having gone, with a companion, to the house of the deceased, who was giving a "party" to the young people of the neighborhood, and attempted to enter, after warning by the deceased not to come in, and having shot the deceased in the door of his house, after the deceased had shot him with a gun as he continued to advance; he can not be allowed to prove "that it was the custom of the young people in the neighborhood to go to parties without invitation."

4. *Whole conversation as evidence, when part has been proved.*—When part of a conversation has been proved by one party, the other may, on cross-examination of the witness, call for the whole of it.

5. *Declaration of third person as evidence; hearsay.*—The defendant having gone to the house of the deceased without invitation, and against his known objection, attempting to enter after being warned not to do so, and having shot and killed the deceased while in the door of his house, after the deceased had fired a shot-gun at him; he can not be allowed to prove that on Christmas night, several weeks before the difficulty, the son of the deceased, while at his house, proposed to go home and get his father's permission for the defendant to come to the house and talk until bed-time, and, on his return, tried to persuade the defendant to go to the house with him; such declarations being mere hearsay, not made in the presence of the deceased, and no connection with them on his part being shown.

6. *Charges as to self-defense, and duty to retreat.*—A charge in these words, "No person is excused for taking human life, if with safety to his own person he could have avoided or retired from the combat;" or in these, "If defendant could have retreated without increasing his danger, after the deceased shot him, then he should have done so, and if he did not do so, but followed deceased to the room, and fired the fatal shot, then he can not invoke the doctrine of self-defense," each asserts a correct legal proposition, and is unobjectionable.

7. *Same.*—A charge which claims an acquittal because the deceased was at fault in firing the first shot, as the defendant advanced after being warned not to enter his house; or which ignores prior

[Davis v. The State.]

fault on the part of defendant in going to the house without invitation, when he had reason to believe that objection would be made to his entrance; or which ignores the duty and opportunity to retreat after the first shot was fired, instead of continuing to advance, is each properly refused.

FROM the Circuit Court of Cherokee.

Tried before the Hon. JOHN B. TALLY.

The appellant in this case, together with John Coheley, was indicted and tried for murder in the second degree, in killing one John J. Morelock; and was convicted for manslaughter in the first degree. The objections, which are raised here for the first time, as to the formation of the grand jury, are identical with those raised in the case of *Tanner v. The State, supra.*

When the cause was called, the defendants stated they were not ready for trial, on account of the absence of several material witnesses, who were regularly subpœnaed, and therefore asked for a continuance on that ground. The court put the State upon the admission of what the absent witnesses would testify, and in said showing the court refused to allow the defendants to state therein any fact which had been testified to by said absent witnesses, and had been reduced to writing and signed by them, on the preliminary examination of the defendants before a magistrate. The defendants excepted to being put upon a showing, and also to the refusal to allow them to make a full statement as to what the absent witnesses would testify.

Upon the trial of the case, as is shown by the bill of exceptions, the testimony for the State tended to show that, prior to February 1st, 1890, there was ill-feeling existing between J. J. Morelock, the deceased, and the defendant Davis, and that Davis had been ordered not to come to the said Morelock's house; that on the night of February 1st, 1890, there was a party at the house of said Morelock, where several young people had gathered; that the defendant Davis, together with defendant Coheley and Kye Williams, came to the house of the said Morelock; that Morelock was standing in the hall of his house, and heard them outside of the gate, which was variously estimated to be from 17 to 30 feet from the porch; that the said Morelock hailed them, and asked "Who is that?"; that upon being told by said Davis that it was he, he told him not to come in; that Davis continued to come towards the house through the gate, and said Morelock told him two or three times to halt, and not come into his house; that when Davis got to the steps of the house, he threw his hands back of him, and said "Shoot and be damned;" and that Morelock, who in the meantime had gotten a gun, and had it in his hands raised

[Davis v. The State.]

it, and shot Davis about the hips; that thereupon Morelock went into a room opening on the porch, and picked up an axe; that after Davis was shot, he advanced ten or twelve feet towards Morelock, came upon the porch, and shot said Morelock with a pistol when he was in the door of said room, whereupon said Morelock hit the defendant Davis several times with the axe; that Davis then called, "John, John," and the defendant Coheley came in, and hit Morelock several times upon the head, one blow of which fractured his skull. The physician who attended said Morelock stated, that he died from the effects of the pistol wound on the next day after he was shot; that the pistol shot was of itself sufficient to produce death, and he described the nature of the wound.

Upon the introduction of the showing of Kye Williams as evidence, and also on the examination of Robert Cohely, the State objected to each of the witnesses testifying "that it was the custom to go to parties without invitation, by young people of the neighborhood," and moved to exclude the said testimony. The court sustained the objection, and excluded the offered testimony; and the defendants duly excepted thereto.

On the examination of Martha J. Morgan as a witness for the defendant, and after she had testified on her direct examination that, about two weeks before the difficulty Ida Morelock, daughter of the deceased, had told her, in the presence of the defendant Bob Davis, that she, Ida, was going to have a party at her house on the 1st night in February, 1890, on cross examination she was asked by the State, "when Ida Morelock came after you to go to the party, did she not say that Davis and Coheley [defendants] were gone to Georgia, and that they could have the party?" The defendants objected to this question, but the court overruled the objection, and the defendants thereupon excepted.

On the examination of one Charley Hickman, the defendant offered to prove that, on Christmas eve night, preceding this difficulty, at the house of Bob Davis, Jim Morelock, son of J. J. Morelock, proposed to the defendant Davis, that he would go down and get permission of said J. J. Morelock, the deceased, for Davis to come to his house, and "talk until bed time;" and that after having gone to said Morelock's house, said Jim Morelock returned to the house of the defendant Davis, and tried to get him to go down to said Morelock's house, but the defendant refused to go. Upon the objection of the State to this evidence, the court refused to allow it to go to the jury, to which ruling the defendant duly excepted.

The other evidence for the defendant tended to show that,

[Davis v. The State.]

at the time Morelock shot the defendant, he was within but a few feet of him, and that as soon as he had told him to halt, said Morelock fired without waiting to speak to him again. There were many witnesses introduced, and many other collateral facts testified to; and there were many exceptions reserved to the various rulings of the court which are not assigned as error by the defendant's counsel.

The court at the request of State's counsel, gave the following written charges, to the giving of each of which the defendants separately excepted : (1.) "No person is excused for taking human life, if with safety to his own person he could have avoided or retired from the combat." (2.) "If Davis could have retreated without increasing his danger, after Morelock shot him, then he should have done so; and if he did not do so, but followed Morelock to the room, and fired the fatal shot, then he can not invoke the doctrine of self-defense."

After having asked the general affirmative charge in their behalf, the defendants requested the court to give among others, the following written charges :

(1.) "Before Morelock can be excused for shooting Davis, it must appear from the evidence that he, Morelock, had reasonable grounds to believe that he was in danger of great bodily harm at the hands of Davis." (5.) "If Davis was guiltless of any fault up to the time Morelock shot him; and if the jury believe from all the evidence that, after Morelock shot Davis, he, Davis, was unable to get out of Morelock's way, then Davis had a right to pursue Morelock to the room near by, and kill him, if he, Davis, reasonably thought this killing was necessary to save his life, or prevent any further bodily harm." (8.) "If the jury believe from the evidence that Davis went to Morelock's house to meet young people there at a party, and he reasonably supposed from having previously met Morelock, and from other circumstances, that he would be received as a guest, and that upon entering the house, Morelock, without attempting the use of gentle means, shot him to prevent his entering, and was about or attempting to use an axe, or other weapon likely to produce death, upon Davis; and Davis, from being disabled from the shot, was unable to retreat, or get out of the way of Morelock, and he reasonably believed, and had cause to believe, that if he turned his back he would increase his danger; then he had the right to shoot to save his own life, or protect himself from great bodily harm." (13.) "If the jury believe from the evidence that Davis went to Morelock's to a party, and that he, at the time he was shot by Morelock, was quietly entering his piazza, with no hostile demonstrations, and that Morelock shot him in that condition,

and it really appeared to Davis that he was in danger of great bodily harm from Morelock at the time he, Davis, shot Morelock, then Davis was justifiable, and should be acquitted." (16.) "If Davis, at the time he was shot by Morelock, had nothing in his hand, and was making no demonstrations to injure Morelock, and was in a quiet manner entering his house, and Morelock, without any demonstrations on the part of Davis, shot him, and Davis had reasonable ground to fear further great bodily harm from Morelock, and with this belief shot him, he is not guilty as charged." (19.) "That if the jury believe from the evidence that, when Davis was shot by the deceased, his body and mind were so shocked by the wound as to deprive him of momentary reason, then he could not be guilty as charged in the indictment." (21.) "Morelock was not authorized to resist Davis in civilly entering his house, by shooting him with a gun; and if Morelock wrongfully assaulted Davis with a gun, and Davis, acting under the reasonable apprehension that he was in danger of great bodily harm at the hands of Morelock, fired upon Morelock, then he was justifiable, and should be acquitted." (24.) "There is no proof that Morelock ordered Davis not to come to his house, or enter his dwelling." The court refused to give each of the charges as asked, and the defendant separately excepted to each refusal.

There was a verdict of not guilty as to the defendant Coheley, and a verdict of guilty of manslaughter in the first degree as to the defendant Davis.

W. H. DENSON, for appellant, cited *Smith v. State*, 88 Ala. 73; *Phillips v. State*. 68 Ala. 469; *Billingslea v. State*, *Ib.* 486; *Cross v. State*, 63 Ala. 40; *Carroll v. State*, 23 Ala. 28; *Storey v. State*, 71 Ala. 330.

WM. L. MARTIN, Attorney-General, for the State, cited *Fonville v. State*, 91 Ala. 39; *Martin v. State*, 88 Ala. 115; *Gibson v. State*, *Ib.* 121; *Rutledge v. State*, *Ib.* 85; *Poe v. State*, 87 Ala. 65; *Cribbs v. State*, 86 Ala. 613; *Jordan v. State*, 81 Ala. 20; *Mitchell v. State*, 60 Ala. 26; *Eiland v. State*, 52 Ala. 322; *Wills v. State*, 74 Ala. 21.

WALKER, J.—1. The objection, sought to be raised in this court for the first time, that the record of the Circuit Court, in that it enumerates only fourteen persons who were sworn as grand jurors, does not show the due organization of a grand jury of fifteen persons as required by a special act of force in Cherokee county, must be disposed of adversely to the appellant on the authority of the decision of this court in the case

of *Tanner v. The State, supra,* p. 1, which, as to the subject-matter of the objection, presented a state of facts similar to that in this case.

2.     When the case was called for trial in the Circuit Court, the defendants announced that they were not ready, because of the absence of certain witnesses, who had been duly summoned in their behalf.     The testimony of the witnesses had been taken, reduced to writing, and signed by them on a preliminary examination of the defendants.     The State was put upon the admission of the testimony of the absent witnesses as preserved in that form, and also of statements prepared by the defendants as to such evidence by said absent witnesses as was not drawn out on the preliminary trial; but the court declined to put the State upon the admission of a statement, then presented by the defendant, of what said witnesses would testify to if present, so far as said statement extended to matters covered by their testimony as preserved by the examining magistrate.     The appellant excepted to the action of the court in so confining him in reference to the statement to be presented to the counsel for the State for admission.     The exercise of the discretion vested in the trial court, in reference to such matters, is not revisable here.     When a party to a cause applies for a continuance, if the court is satisfied that all reasonable grounds for the application are removed by an admission of the adverse party, it may require the trial to proceed. We will not say that a case may not be so presented here as to show that there was such a gross abuse of the discretion vested in the trial court in this regard, that a reversal would be plainly necessary, in order to afford a party an opportunity for a fair trial.     But this is no such case.     The good faith of an application for a continuance, on account of the absence of witnesses, might well be doubted, when the party making the application insists upon being allowed the privilege of wholly rejecting the testimony of such witnesses, as regularly taken under official supervision, and subscribed and sworn to by themselves.     The defendant was allowed to state such additional testimony as he expected to elicit from said witnesses. The action of the court, in the circumstances, in declining to allow the defendant unrestrained license in stating what the absent witnesses would swear to if present, has all the appearance of a fair exercise of discretion, for the purpose of withholding from the defendant the opportunity of forcing the counsel for the State to the alternative of electing to submit to an imposition, or to a continuance of the case.— *White v. State,* 86 Ala. 69; *DeArman v. The State,* 77 Ala. 10; *Dean v. The State,* 89 Ala. 46.

[Davis v. The State.]

3. The court' properly excluded evidence of the alleged custom of the neighborhood in which the defendant and the deceased lived. Morelock was entitled to the exclusive possession of his own house. He could there receive and entertain such persons as it was his pleasure to admit. It was equally his right to exclude other persons whose presence was not agreeable to him. He enjoyed this absolute dominion by virtue of his ownership or lawful possession. No neighborhood habit could abridge the rights in his residence secured to him by the law. The practice of young men in that community to go uninvited to entertainments at private houses could not ripen into a custom in the legal sense of that term. A custom is a law established by long usage. No unreasonable invasion of recognized personal or property rights can be justified on the ground of usage. One's habit to permit or encourage his acquaintances to visit his residence at will, can never clothe them with a higher privilege of entry upon his premises than is conferred by an express or tacit license, which may be revoked at any time. Such privilege can not be claimed by an acquaintance, who knows that his presence is not desired, and that an implied invitation which may be availed of by others does not extend to him. A mere permission, which may be presumed from the previous neighborly relations and acts of the parties, no matter how long or by what number of persons it may be enjoyed, could not grow into a legal right. In any particular case, the question of the propriety of the entry by one person into another's residence would depend upon the existence of an express or implied license, and not upon a custom set up as the support of an alleged right. The custom proposed to be proved is unreasonable, its establishment would involve an unauthorized abridgement of the ancient common-law right of the proprietor to maintain the privacy and inviolability of his home as he may choose to use it for the pleasure, comfort or protection of himself, his family or his friends. Such an usage cannot confer legal rights, or afford justification for conduct otherwise unauthorized.—*East Birmingham Land Co. v. Dennis*, 85 Ala. 565; *Winder v. Blake*, 4 Jones' Law (N. C.), 332; Lawson on Usages and Customs, 15, 332.

4. The defendant, on the direct examination of the witness Martha J. Morgan, elicited a part of a conversation she had had with Ida Morelock, a daughter of the deceased. This having been done, it was competent for the counsel for the State to draw out, in the cross-examination, any other statement made in that conversation in reference to the same matter which had not already been testified to. On this ground,

the court properly overruled the defendant's objection to the question asked that witness by the counsel of the State. *Dodson v. The State*, 86 Ala. 60.

5. The proposed evidence as to what the deceased's son, Jim, did or said in his absence was merely hearsay, and was properly rejected. The deceased was in no manner connected with, or bound by what his son may have said to other persons, in reference to the defendant having had permission to visit the house on the night before the previous Christmas.

6. The two charges given at the instance of the State were pertinent to the evidence, and they correctly assert the familiar doctrine as to the duty of retreat, when retreat with safety is practicable, and the necessity of taking life may be thereby avoided.—*Lee v. The State, supra.; Carter v. The State*, 82 Ala. 13.

7. There was much evidence tending to show that the relations between the deceased and appellant were such as to warn the latter that any attempt by him to enter the former's residence would be resented, or resisted. The evidence also tended to show that, after the appellant was shot, he advanced into the house in pursuit of the deceased, and there inflicted the fatal wound. In this state of the evidence, the questions of the defendant's freedom from fault in bringing on the difficulty, and of the impracticability of retreat by him, after he was shot, could not be eliminated from the case. That Morelock was wrong in shooting, could not alone afford justification to Davis. The proposition of the first charge requested by defendant is confined to the inquiry as to Morelock's fault in firing the first shot. Nothing is there asserted in reference to the offense for which the defendant was on trial. The charge was calculated to withdraw the minds of the jury from the question really at issue, and to convey the impression that, if Morelock could not be excused for what he did, it would follow from that, that Davis was justifiable in killing him. It was properly refused. The same criticism applies to the tenth and twelfth charges refused. A proposition of the fifth charge, which was refused, is, that Davis had the right to pursue Morelock and kill him, if he reasonably thought that course necessary to prevent any further bodily harm. The justification of the killing is not rested upon the necessity of averting danger to life or limb, or of great bodily harm, but of any bodily harm, however trifling or insignificant, though it may not involve even substantial personal inconvenience. It is plain that the law can not recognize any such light excuse for the taking of human life. The eighth charge was defective, in pretermitting all inquiry as to defendant's freedom

from fault in pursuing the deceased into the house, and there exposing himself to further attack. The evidence showed that, after the defendant was shot, he proceeded some distance farther in the direction of the deceased, and that the deceased attempted to use the axe only after the defendant was shot, and after he had advanced into the house. In view of the evidence, the charge should have hypothesized the defendant's freedom from fault, not only in going to the house, but also in entering therein after he was shot, and putting himself in reach of the axe, or other weapon used by the deceased. He was not relieved of the duty to retreat, if, after being assaulted, he advanced into further peril, and thereby unnecessarily exposed himself in a position from which escape with safety was impracticable. Charges 13, 16, 19, 21 and 24, are each defective in ignoring one or both of the questions as to defendant's fault in bringing on the difficulty, and as to his opportunity to retreat before he fired the fatal shot.

Counsel for appellant have assigned errors on the record, without referring to many exceptions which were reserved on the trial. The conclusions of the court have been expressed upon all matters which were assigned as error, or suggested in the oral arguments, or in the briefs, All exceptions, whether insisted upon by counsel or not, have been carefully considered, and no error has been discovered in the record.

Affirmed.

## *Indictment for Murder.*

