# Bell *v.* The State.

*Indictment for Murder.*

1. *Appointment of special judge; court takes judicial notice thereof; dismissal of appeal.*—An attorney who is appointed and commissioned by the Governor as a special judge to hold a term of the circuit court of a given county, in pursuance of the statute authorizing such appointment (Acts of 1894-95, p. 1135), is as much an officer of the State during the time and for the purposes for which he is appointed, as is the regular judge; and the Supreme Court will take judicial notice of his appointment and authority. Therefore, it is no ground to dismiss an appeal from a judgment of the court presided over by such special judge, that his appointment is not set out in the record, or it is not otherwise shown by the record, that he was authorized to sit as the special judge of said court.

2. *Plea in abatement; former indictment.*—A plea in abatement of

[Bell v. The State.]

an indictment for murder, which alleges that a former indictment charging the defendant with the same offense, on which he had been previously arraigned, and to which he had pleaded not guilty, was still pending when defendant was called to plead to the last indictment, presents no reason for abating the cause, and is bad on demurrer.

3. *Venire in capital case; not quashed for mistakes in names of persons summoned as jurors.*—The venire in capital cases will not be quashed because of mistakes in the names of persons summoned as jurors, or because of discrepancies in their names between it and the copy served on the defendant.

4. *Trial and its incidents; service of defendant with indictment.*—For compliance with the statute requiring the service of the venire and indictment upon the defendant in a capital case, it is not necessary that the copy of the indictment served upon the defendant should contain a copy of the organization of the grand jury which preferred it.

5. *Organization of petit jury; defendant can not complain when juror directed to stand aside at his instance.*—Where, in the impannelling of a petit jury in a capital case, upon the name of one of the persons summoned being drawn from the jury box, the defendant informs the court that upon the list which was served upon him the name numbered to correspond with the number of the name drawn from the jury box, was spelled differently from the one drawn from the box, and the court thereupon directed such juror to stand aside, it will be construed that such action on the part of the court was taken at the instance of the defendant, who can not afterwards complain thereof; and the commanding of the juror to stand aside furnishes no valid objection to further proceeding with the organization of the jury.

6. *Same; one drawn as a juror can not be made to stand aside of the court's own motion, for the reason that he was a witness in the case.* While it is a cause for the challenge of a juror by either one of the parties to a suit, that the juror is a witness for the other party,(Cr. Code of 1886, § 4331), still such fact does not render the juror disqualified or incompetent to serve; and it is, therefore, error, in the absence of a challenge by either party, for the court, of its own motion, to excuse a person drawn as a juror because he is a witness; such fact being merely a cause for challenge, which may be waived by either or both parties.

7. *Same; waiver of objection.*—In the organization of a petit jury in a capital case, the court, at the instance of the defendant, set aside the name of a person drawn as a juror, because there was a mistake in the spelling of the name. There was no order made that another person be summoned to supply the place of the juror directed to stand aside, nor was there a motion therefor made by either party; but the organization of the jury proceeded without objection and two other names were drawn from the jury box. Thereupon the solicitor suggested to the court that the sheriff should be directed to summon a juror to supply the place of the one who had been ordered to stand

[Bell v. The State.]

aside. Upon the sheriff's summoning another person, the defendant objected, because two names had been drawn from the box after said jury had been discharged, and because the names of two other jurors, in which there were mistakes in the initials and spelling had been placed in the box, and because they were not discarded and others summoned to supply their place before proceeding to draw the jury. The defendant also objected upon the same grounds to further proceeding with the selection of the jury. *Held:* That such objections were waived by the defendant's failure to make them until after the organization of the jury had proceeded by the drawing of two persons from the box.

8. *Homicide; evidence as to when defendant was seen after the commission of the homicide.*—On a trial of a defendant for murder, where there is evidence tending to show that after the killing the defendant was a fugitive from justice, and a witness who was present at the homicide testifies that he had not seen the defendant from that time until he saw him in the court-house, it is permissible to ask such witness, "If the defendant, when seen by him, was in the custody of an officer?" the evidence evoked by such inquiry having some bearing upon the subject of the defendant's flight.

9. *Weight and sufficiency of evidence in criminal case; charge to the jury.*—The want of more evidence in favor of innocence than there is in favor of guilt, does not necessarily determine that the jury may not have a reasonable doubt of guilt; and a charge which so instructs the jury, in effect, is free from error and should be given.

10. *Same; same.*—A charge which instructs the jury "that even after the evidence has removed all probability of defendant's innocence, the law says they may entertain a reasonable doubt of his guilt and find him not guilty," is misleading and properly refused.

11. *Homicide; freedom from fault in bringing on the difficulty; charge to the jury.*—On a trial under an indictment for murder, where there is evidence tending to show that the defendant was not entirely free from fault in bringing on the difficulty, which resulted in the homicide, a charge to the jury, which ignores this feature of the evidence, and predicates the defendant's right to strike, upon the action of the deceased creating an honest belief on the part of defendant that he was about to draw a pistol and fire, and that the surroundings were such that to retreat would increase his peril, is erroneous and properly refused.

12. *Same; duty to retreat; charge to the jury.*—To excuse the failure to retreat, the circumstances must be such as that defendant's peril will thereby be increased beyond that to which he would be subjected if he stands and defends himself against his assailant, or must be such as to impress the mind of a reasonable man that the peril will be thereby increased and that he was so impressed; and in a trial under an indictment for murder, a charge which instructs the jury in effect that the defendant was not required to retreat if the deceased was in such proximity to him as to render it hazardous to do so, asserts an erroneous proposition and is properly refused.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. W. W. HARALSON, Special Judge.

The appellant was indicted and tried for the murder of James Childress, was convicted of murder in the second degree, and sentenced to the penitentiary for ten years. The indictment under which the defendant was tried and convicted was preferred by the grand jury at the fall term, 1895, of the circuit court of Marshall county. Upon being arraigned, the defendant moved the court to quash the indictment upon the following ground: "That there was an indictment returned into this court on the 6th day of October, 1894, by a grand jury organized at the fall term, 1894, of this court, on which indictment a capias, or capiases, have been issued, on which this defendant was arrested, charged with the killing of the same person mentioned in this indictment, and that on said indictment found at the said fall term, 1894, charging this defendant with the same offense as charged in the indictment found at the fall term, 1895, this defendant has been arraigned in this court, and said cause is now upon the docket of this court, and the said cause has not, in anywise, been dismissed or discontinued, abated, nor the said indictment quashed, but the same remains in full force and effect as on the day on which this defendant was arraigned thereon." This motion was overruled, and the defendant duly excepted. Thereupon the defendant filed a plea in abatement upon substantially the same grounds as was his motion to quash the indictment; setting out in said plea the indictment preferred at the fall term, 1894, and the one preferred at the fall term, 1895, upon which he was then arraigned, and averring therein "That said cause still remains upon the docket of this court, undismissed, unabated, and said indictment remains in full force and effect, without being discontinued, dismissed, nolle prossed or quashed, or said cause in anywise terminated. And defendant avers that the said second indictment, which is the first above set out, namely the indictment returned into this court at the fall term, 1895, was so returned without any order of the court authorizing the same, and without any order of the court in anywise quashing or suppressing the said first indictment so returned." To this plea in abate-

ment the State demurred upon the ground that "said plea shows no reason in law for quashing said indictment." This demurrer was sustained, and the defendant duly excepted.

Upon the arraignment of the defendant he pleaded not guilty, and upon a day being set for trial, the sheriff was ordered to summon "one hundred persons as jurors for the trial of his case, including those summoned on the regular juries for this week [the week of the arraignment for the trial] and in attendance upon the court;" and it was further ordered that the sheriff serve upon the defendant, at least one day before the day set for his trial, a copy of the indictment and a list of the jurors summoned for his trial, including the regular jurors summoned for the week, and in attendance upon the court.

Upon the cause being called for trial, and before entering thereupon, the defendant moved the court to quash the venire upon the following grounds: 1st. That the sheriff did not serve the defendant with a list of the jurors summoned and in attendance on the court during the week set for his trial, in that the name of L. H. Turner, a juror who was in attendance on the court and impannelled as a regular juror was omitted from the list, and the name of one T. H. Turner, who was not in attendance upon the court, and was not summoned as a juror, was inserted in lieu thereof; and that the name of R. F. B. St. John, a regular juror summoned and in attendance for the week was omitted, and in lieu thereof was inserted the name of R. T. B. St. John. 2d. Because the court, without the consent of the defendant and in the absence of the defendant and his counsel, excused from attendance upon the court two jurors, who had been regularly drawn and summoned as such for the week of the court in which the trial was to be had; and, therefore, the names of those two jurors are not included in the names of the venire served upon the defendant. 3d. Because there was not served upon the defendant or his counsel a copy of the indictment in this cause, in that the organization of the court at the term at which the indictment purports to have been returned was not set out in the paper purporting to be a copy, and the organization of the grand jury finding said indictment is not set out in the paper served upon the de-

[Bell v. The State.]

fendant, and that the caption of the indictment in this case was not set out in said paper. 4th. That the names of Lewis H. Turner and J. F. Kennamer, who are of the regular jurors who were in attendance on the court the week of the defendant's trial, were not included in the list served upon the defendant. In reference to this motion, it was admitted that the copy of the indictment served upon the defendant did not contain the organization of the court at the time the indictment was preferred, nor the organization of the grand jury by which said indictment was found, and that the paper served upon the defendant was only the indictment itself as a part of the record. It was further shown that the third name on the list of jurors served upon the defendant was "T. H. Turner," whereas the name on the regular jury for the week was "L. H. Turner;" and that no person named T. H. Turner was in attendance, but L. H. Turner was. That the fourth name on the list of jurors served on the defendant was "R. T. B. St. John," whereas the name of the regular juror for the week, coming fourth was "R. F. B. St. John," and it was shown that R. F. B. St. John was in attendance as a regular juror, and no person named R. T. B. St. John was. It was further shown that the twenty-sixth name on the list of jurors served on the defendant was "J. F. Kennaner," whereas the twenty-sixth name on the regular jury for the week was "J. F. Kennamer," and that J. F. Kennamer was in attendance as a regular juror, while there was no such person as J. F. Kennaner served, nor in attendance. The court overruled the defendant's motion to quash the venire, and to this ruling the defendant duly excepted.

The bill of exceptions then recites : "The court then, without discarding the names of the three persons mentioned in the above motion, and without summoning, or ordering summoned, any persons to take the places of these jurors, ordered the sheriff to place the names of the jurors in a box. The fifteenth name drawn from the box by the sheriff was number twenty-six, and the juror called was J. F. Kennamer, and on the defendant informing the court that this number on the list served on him was J. F. Kennaner, the court directed this juror to stand aside, but did not order the sheriff to summon any one to supply his place, and ordered the sheriff to draw

[Bell v. The State.]

another name from the box. This the sheriff did, drawing number sixty-four, which juror was challenged preemptorily by the State. The court then ordered the sheriff to draw another name from the box, which the sheriff immediately did, drawing number twenty-three. After this juror was drawn, the solicitor suggested to the court that the sheriff should be directed to summon a juror to supply the place of the juror whose name had been discarded. The sheriff summoned one John Lewis as a juror, and proceeded to write his name upon a slip of paper to put in the box, and to this defendant objected, because two names had been drawn from the box after said Kennamer had been discharged, and because St. John's and Turner's and Kennamer's names had been placed in the box, and because they were not discarded and others summoned to supply their places before proceeding to draw the jury. The court thereupon directed the sheriff not to put this person's name, John Lewis', so summoned, in the box. The defendant then objected on the above grounds to proceeding with the selection of the jury. The court overruled the objection, and the defendant excepted. During the drawing of the jury, number fifty-seven was drawn from the box by the sheriff, and R. C. Harris answered. During his examination by the court as to his qualification as a juror, he stated that since he had been summoned as a juror, he had been summoned as a witness for the defendant. Thereupon the court, without said juror being challenged by either side, but on its own motion, ordered said juror to stand aside, which he did, and to this action of the court the defendant objected and excepted. When the next juror was drawn, and after his examination by the court, and after he was accepted by the State, defendant objected to having the juror put upon him, because one hundred names were not put in the box at the commencement, excluding the names of the three jurors above named—Turner, St. John and Kennamer; and because three persons had not been summoned to supply their places, and defendant objected to proceeding with the selection of the jury. The court overruled the objection, and required the defendant to proceed, and to this the defendant excepted. This objection was made to each juror subsequently called. During the further drawing of the jury the sheriff drew from the box the

number seventy-four, and W. N. Claburn answered thereto. After he was accepted as a juror by the State, and put on the defendant, defendant objected to having him put on him, as he was summoned as a regular juror for the week, and had been discharged by the court, having served as a regular juror at the spring term, 1896, of the court, his name not appearing in that portion of the list served on defendant designated as regular jurors. The court overruled the objection and the defendant excepted. During the further drawing of the jury, the sheriff drew from the box number three, to which L. H. Turner answered when called. The court, on defendant calling attention to the discrepancy in the name 'L. H.' and 'T. H.,' as above set out, ordered this juror to stand aside, and directed the sheriff to summon a qualified juror to supply the place, and the sheriff then summoned John Lewis and put his name in the box, and then, under the direction of the court, drew therefrom. When number fifty-two was drawn, and W. M. Large was called, examined by the court and accepted by the State, defendant objected to having this juror put on him, because thirty-eight names had been drawn, and ten jurors accepted before the name of said Turner had been discarded, and a juror summoned to supply his place. The court overruled the objection, and defendant excepted. During the further drawing of the jury, the juror St. John, number four, was drawn and likewise discarded and another summoned under the direction of the court to supply his place. Defendant objected to this being done, because the names were not discarded and jurors to supply places summoned, before commencing to draw the jury. After this, and before the names of either of the jurors who had been summoned to supply the place of the three discarded jurors had been drawn from the box, the defendant had exhausted his twenty-one peremptory challenges, and after they were exhausted he objected to proceeding with the drawing of the jury, because the names of the jurors to supply the places of the jurors who had been discarded had not been placed in the box in the commencement, and he had not had an equal chance to have said jurors drawn before his challenges were exhausted, and because he had not had an (equal chance to have) had one of them in place of some other juror taken or

to be put on him. This objection the court overruled, and defendant excepted. The next juror drawn, the State challenged peremptorily, and to this the defendant objected because of the irregularity in the discarding the jurors. The court overruled the objection and the defendant excepted."

The State introduced as a witness one Jim Tom Childress, who testified that at the request of the deceased he went with him and another person to the defendant's house; that they went by the back side of defendant's field and through the field to his house; that before they got to the house they saw the defendant at his horse lot 200 yards away from them; that they then saw the defendant riding away from his lot up the road, which ran in front of his house; that neither he, the deceased· nor the other person with them spoke to or called the defendant; but that after they passed through the defendant's yard and some little distance up the road, the defendant stopped, turned around in the road and dismounted his horse; and that as the deceased and the witness and the other person approached within about fifteen paces, the defendant said to the deceased: "G—d d—n you, stop !" and that about the time he spoke he lifted his gun to his shoulder and shot deceased in the breast. This witness further testified that he did not see the defendant from that time until he saw him in the court-house at the spring term 1895 of the circuit court. The solicitor then asked the witness the following question : "If the defendant, when seen by him, was in the custody of an officer?" The defendant objected to this question, and duly excepted to the court's overruling his objection. The witness stated that the defendant was in custody of an officer, and the defendant thereupon moved to exclude the answer, and duly excepted to the court's overruling his motion. There was also evidence introduced for the State tending to show that after the homicide the defendant was, up to the time of his arrest, a fugitive from justice. There was other evidence introduced in behalf of the State, which it is unnecessary to set out in detail.

The testimony for the defendant tended to show that the deceased and those who were with him were seeking defendant; that as they approached his house, he mounted his horse and went some distance up the road;

that after dismounting as they approached him, the defendant commanded them to stop; that the deceased and those who were with him paid no attention to this demand, and as they came closer the deceased said, "Get ready, boys," and thereupon the deceased put his hand in the saddle bags, which were over his shoulder, and one of those who were with him attempted to draw his pistol from his pocket; that upon seeing this, the defendant threw up his gun and fired, shooting the deceased, and after this he presented his gun at one of the persons who was with the deceased and commanded him to put up his pistol. There was other testimony for defendant tending to show that the deceased had in his saddle-bags a pistol, and that one of the persons with deceased was attempting to draw his pistol at the time he fired, but that it got caught in the lining of his coat.

There were many charges requested by the defendant, to the refusal to give each of which the defendant separately excepted. Under the opinion on this appeal it is unnecessary to set them out in detail, as the large majority of them, referred to by number in the opinion, are instructions as to the duty of the jury in arriving at a verdict; as to the weight and sufficiency of evidence to justify a conviction; and as to what constitutes a reasonable doubt of the defendant's guilt and would justify an acquittal. Among the charges asked, and to the refusal to give each of which an exception was reserved, were the following: (10.) "If the jury are not satisfied beyond all reasonable doubt to a moral certainty, and to the exclusion of every other reasonable hypothesis, but that of the defendant's guilt, they should find him not guilty. And it is not necessary to raise a reasonable doubt that the jury should find from all the evidence a probability of the defendant's innocence, but such a doubt may arise even when there is no probability of his innocence in the testimony, and if the jury have not an abiding conviction to a moral certainty of his guilt, it is the duty of the jury to find the defendant not guilty." (11.) "The court charges the jury that although there may be no probability of the defendant's innocence, yet, if there is in the minds of the jury a reasonable doubt of his guilt, it is the duty of the jury to give him the benefit of such doubt and acquit him." (15.) "The court

·charges the jury that even after the evidence has removed all probability of the defendant's innocence, the law says that they may entertain a reasonable doubt of his guilt and find him not guilty." (20.) "The court charges the jury that if they find from all the evidence in the case that the deceased called to the defendant, and that with no hostile purpose, the defendant stopped and alighted from his horse, and that the deceased from either a hostile disposition or a mistaken sense of his rights and authority did such an act as was calculated to impress a reasonable man with the honest belief that he was about to draw a pistol and fire, and that his conduct did so impress the mind of the defendant, and that under such impression the defendant reasonably believed that flight would increase his peril, and that under such belief that the deceased was about to do him some great bodily harm, or take his life, and that the conduct of the deceased was such as to reasonably impress the mind of the defendant with the honest belief that the deceased was about to draw a pistol and fire on him, and that retreat would increase his peril, then the defendant had the right to anticipate him and fire first." (21.) "The court charges the jury that if from a survey of all the evidence in the case they find that the deceased was approaching the defendant in a threatening and hostile manner, and that the defendant spoke to him in a peaceful and orderly manner, and that the deceased was in such proximity to the defendant as to render it hazardous to attempt flight, and that the deceased advanced towards him, and placed his hand upon, or in the direction of his pistol, or where the defendant reasonably believed his pistol to be, and did impress the defendant with the honest belief that the deceased was about to draw and fire, the defendant had a right to anticipate him and fire first; and if so doing resulted in the death of the deceased, the defendant would be guiltless, and the jury should acquit the defendant."

After the case was brought to this court on appeal, the Attorney-General made a motion to dismiss the appeal upon the following ground, as set out in said motion: "That the bill of exceptions is not signed by the judge of the circuit in which the trial was had, nor by the judge of any other circuit in this State, but pur-

[Bell v. The State.]

ports to be signed by one W. W. Haralson, who is not a judge of this State, holding either regular or special commission as such.''

LUSK & BELL, for appellants.—1. The ground of the defendant's motion to quash and of his plea in abatement that a copy of the indictment was not served upon him, in that it did not contain the organization of the grand jury which preferred it, and was without the caption, should have been sustained.—Cr. Code of 1886, § 4449; 2 Brick. Dig. 279, § 440; *Goodloe v. State*, 60 Ala. 93.

2. The court certainly had no authority to discharge the juror, R. C. Harris, who stated that he had been summoned as a witness for the defendant. That he had been so summoned afforded a ground of challenge on the part of the State, but unless the State's attorney saw proper to exercise this right, the court had no authority to order the juror to stand aside. Even where a juror is is jail under sentence, it is error for the court not to send for him.—3 Brick. Dig. 265, § 184; *Boggs v. State*, 45 Ala. 30; *Simon v. State*, 108 Ala. 27.

3. The ruling of the court requiring defendant to proceed with the selection of the jury, notwithstanding three persons had not been summoned to supply the places of the jurors Turner, St. John and Kennamer, was erroneous.—*Roberts v. State*, 68 Ala. 515.

4. Charges 10, 11 and 15 should have been given.— *Croft v. State*, 95 Ala. 3. Charges numbered 20 and 21 were correct and should have been given.—*DeArman v. State*, 71 Ala. 351; *Storey v. State*, 71 Ala. 329; 3 Brick. Dig. 219, §§ 570, 653.

WILLIAM C. FITTS, Attorney-General, for the State.

HEAD, J.—There is no merit in the motion of the Attorney-General to dismiss the appeal on the ground that the court is without jurisdiction for the reason that it does not appear by the record that W. W. Haralson, Esq., who presided as special judge upon the trial of the cause, was authorized to sit as a special judge of said court. For one of the causes specified in the statute, (Acts, 1894-95, p. 1135), Mr. Haralson was appointed and commissioned by the Governor as special judge to

[Bell v. The State.]

hold the fall term 1896 of the circuit court of Marshall county, in pursuance of the said statute. The judge appointed under that act is as much an officer of this State during the time and for the purposes for which he was appointed, as the regular incumbent, and we will take the same judicial notice of his authority.

The defendant pleaded in abatement of the indictment, under which he was tried, that a former indictment charging him with the same offense, upon which he had been previously arraigned, and to which he had pleaded not guilty, was still pending in the court against him, at the time he was arraigned and called upon to plead in this cause. The court properly sustained the demurrer to this plea.—*People v. Fisher*, 14 Wend. 9 ; 28 Am. Dec. 501 ; Hawk, P. C. b. 2, c. 34, § 1.

The venire in a capital case can not properly be quashed because of mistakes in the names of the persons summoned as jurors, or because of discrepancies in their names between it and the copy served on the prisoner.— Code of 1886, § 4322 ; *Roberts v. State*, 68 Ala. 156 ; *Hubbard v. State*, 72 Ala. 164.

The record of the order of the court for the summoning of the jury and the service of a copy of the venire and indictment appears to be regular.

It has never been the practice, and the law does not require, that the copy of the indictment served on the prisoner should contain a copy of the organization of the grand jury. The purpose of the statute is to give the prisoner an opportunity to be informed of the particular charge brought against him, and this is fully accomplished by serving him with a copy of the indictment, as filed.

The proper interpretation of the bill of exceptions is that J. F. Kennamer, who was drawn and called as a juror, was directed to stand aside upon the invitation of the defendant, and the latter can not complain of it. It furnished no valid objection to further proceeding with the organization of the jury.

It is cause of challenge of a juror by a party that the juror is a witness for the other party.—Code of 1886, § 4331. The trial court, against the objection and exception of the defendant, ordered R. C. Harris, who was called as a juror, to stand aside, for the reason that Harris had been summoned as a witness for the defend-

ant. This action was of the court's own motion, when it was disclosed by the examination of Harris, as to his qualifications, that he had been summoned as a witness for the defendant. The juror was not challenged for the cause by either party. We think the court erred in this action. The juror was not disqualified, or incompetent to serve. He was subject only to challenge for the statutory cause, to be exercised at the election of a party; first of the State, and, if waived by it, then of the defendant. It was a cause of challenge which the parties could waive, and if waived, the court had no authority, of its own motion, to set the juror aside.

When the court set aside the name of J. F. Kennamer, at the instance of the defendant, as hereinbefore stated, it did not order another person to be summoned to supply his place, as the statute provides shall be done. No motion was made by either party that the same should be done, but the organization of the jury proceeded without objection, and two other names were drawn from the box. The solicitor then suggested to the court that the sheriff should be directed to summon a juror to supply the place of Kennamer. The sheriff summoned one John Lewis, as a juror, and proceeded to write his name upon a slip of paper to put in the box, and to this the defendant objected, because two names had been drawn from the box after said Kennamer had been discharged, and because St. John's and Turner's and Kennamer's names (as to which there were mistakes in initials and spelling) had been placed in the box, and because they were not discarded and others summoned to supply their places before proceeding to draw the jury. The court thereupon directed the sheriff not to put John Lewis' name in the box. The defendant then objected, on the above grounds, to proceeding with the selection of the jury; and thereafter, as each juror was called, renewed the objection. We are of opinion, and so hold, that these objections were waived by the defendant, by reason of his failure to make them until after the organization of the jury had proceeded by the drawing of two persons from the box.

There was no error in permitting the witness, Childress, to testify that when he first saw defendant, in the spring of 1895, he, the defendant, was in the custody of

an officer. The evidence had some bearing on the subject of flight, of which there was other evidence.

The defendant requested a great many different charges, all of which we have examined. Those numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, 16, 18, 19, 22, 23, 24, 25, 26, 27, 28, 29, are so obviously faulty, upon principles so often laid down by this court, that we deem it unnecessary to comment upon them.

We think charges 10 and 11 requested by defendant ought to have been given. The effect of these charges is, that the want of more evidence in favor of innocence than there is in favor of guilt, does not necessarily determine that the jury may not have a reasonable doubt of guilt. If the evidence, whatsoever may be its *quantum* tending to show guilt or innocence, is such as to leave the jury in reasonable doubt of guilt, the defendant is entitled to an acquittal, and that doubt may exist, notwithstanding the preponderance of the evidence is in favor of guilt.

Charge 15, though seemingly intended to be of the same order, is so drawn as likely to mislead the jury, and was properly refused.

Charge 20 does not sufficiently hypothesize the defendant's freedom from fault in bringing on the difficulty. If he made the declaration testified to by the witness, Jim Tom Childress, as the deceased and others approached defendant, it was a circumstance to be considered by the jury in determining whether or not defendant was entirely free from fault. The charge ignores this feature of the evidence.

Charge 21 does not properly state the duty of retreat. Its effect is, that the defendant was not required to retreat, if the deceased was in such proximity to him as to render it hazardous to do so. The law is that to excuse the failure to retreat, the circumstances must be such as that the defendant's peril would have been increased thereby beyond that to which he would have been subjected had he stood and defended himself against his assailant; or were such as to impress the mind of a reasonable man that the peril would have been thereby increased, and that he was so impressed. The request for this instruction was evidently prompted by the case of *DeArman v. State*, 71 Ala. 351. Upon examination of that case it will be seen that the princi-

[Swoope v. The State.]

ple we declared was, that if the accused was in such proximity to the deceased as to render it hazardous to attempt flight, then (the other essentials of self-defense being present) the law would not require the accused to *endanger his safety* by attempted flight. This is in harmony with the rule above declared, and which is supported by the following array of authorities: *DeArman v. State,* 77 Ala. 10; *Henderson v. State,* 77 Ala. 77; *Finch v. State,* 81 Ala. 41; *McKee v. State,* 82 Ala. 32; *Carter v. State,* 82 Ala. 13; *Williams v. State,* 83 Ala. 16; *Morrison v. State,* 84 Ala. 405; *Cleveland v. State,* 86 Ala. 1; *Blackburn v. State,* 86 Ala. 595; *Poe v. State,* 87 Ala. 65; *Shell v. State,* 88 Ala. 14; *Hammil v. State,* 90 Ala. 577; *Davis v. State,* 92 Ala. 20; *Perry v. State,* 94 Ala. 26; *Roden v. State,* 97 Ala. 54; *McDaniel v. State,* 97 Ala. 14; *Holmes v. State,* 100 Ala. 80; *Gibson v. State,* 89 Ala. 121.

For the errors mentioned, the judgment is reversed, and the cause remanded.

Reversed and remanded.